JjDOUCET, Chief Judge.
Defendant, Double Diamond Casino, appeals a ruling of the Office of Workers’ Compensation reinstating Claimant’s, Marie E. Savoy’s, indemnity benefits and awarding Ms. Savoy penalties and attorney’s fees for Defendant’s failure to provide medical benefits. Ms. Savoy answered the appeal seeking penalties and attorney’s fees on the discontinuance of her indemnity benefits, the quantum of the penalty awarded in connection with the refusal to provide medical benefits (an MRI), and an increase in attorney’s fees to cover the legal expenses incurred as a result of Defendant’s appeal. We amend the judgment of the workers’ compensation judge and affirm as amended.
FACTS
The parties stipulated that Claimant was injured in the course and scope of her employment with the Defendant on June 2, 1997. Ms. Savoy subsequently underwent a discectomy and inter-body fusion with BAK cages on September 4, 1997. Benefits were paid through April 12, 2000.
Our examination of the record shows there are a number of documents in the record which would lead to confusion as to Ms. Savoy’s ability to engage in any gainful employment. On July 27, 1999, Dr. R. Dale Bernauer, Ms. Savoy’s treating physician, sent a letter to AIG Claims, who was handling Ms. Savoy’s claim, stating the following (emphasis ours):
Marie Savoy had a Functional Capacity Evaluation done. She did not wish to go to a Work Conditioning Program. She was seen 6/25/99 complaining of back pain and right leg pain. Her right leg turns in when walking and drags. She had no improvement. She has chronic pain and is at maximum medical improvement. I think she will not be able to go back to any type of gainful employment. She would only be able to work at the slightest-sedentary type work.
| ^.Thereafter, in an August 17, 1999 report, the Defendant’s insurer, fixing on Dr. Bernauer’s statement that Ms. Savoy had reached maximum medical improvement, concluded that “we need to get started in finding the claimant a job.” Thereafter, Concentra Managed Care Services entered the picture, trying to place Ms. Savoy in what was, in its opinion, suitable employment. Most of Concentra’s efforts took place in January and February 2000. This was two months before Dr. Bernauer’s April 2000 letter discussed infra.
Following her April 14, 2000 visit, Dr. Bernauer, sent a letter to AIG Claims, who was handling Ms. Savoy’s claim, stating: “She complains of right shoulder pain and right hip pain. She has neck pain mainly. *975 She also has right leg pain. She claims no improvement.” Dr. Bernauer then concludes: “I think she is able to do sedentary-type work.” Based upon that letter, AIG terminated Ms. Savoy’s compensation benefits.[1]
However, less than one month later, following her May 5, 2000, examination, Dr. Bernauer concluded that it was “necessary to schedule this patient for an MRI of her cervical and lumbar spine to further investigate her current condition and make a determination for her continued care.” This request was denied by the Defendant based on Dr. Bernauer’s April letter and led to the award of penalties and attorney’s fees which form part of this suit.
Additionally, we note that Ms. Savoy had been referred to Dr. Clark A. Gunder-son for an independent medical examination in September of 1998. Even that early in Ms. Savoy’s recovery, there appears to have been a problem. In his report |ato AIG, Dr. Gunderson stated: “I am concerned that she [Ms. Savoy] may have a failure of the fusion because of her persistent mechanical complaints.”
Ms. Savoy returned to Dr. Bernauer on July 12, 2000. In his report of that visit the doctor noted that AIG had not approved the MRI he had requested and had terminated Ms. Savoy’s physical therapy. He found that “she does at this time complain of lumbar spine pain and right leg pain. She also complains of cramping-type pain to her right leg. She also complains of cervical spine pain and right arm pain.” Dr. Bernauer’s examination of his patient revealed “her lumbar spine has a decreased range of motion [and] straight leg raising is positive.” He concluded that he had “nothing further to offer this patient” and sent a letter to AIG Claims stating that Ms. Savoy had reached maximum medical improvement from her surgery. He assessed her with a 50% permanent disability to her back; stated that she couldn’t lift more than 10 to 20 pounds; could not stoop, crawl, or climb; could not stand for more than 80 minutes at a time or sit for longer than three hours at a time. He concluded that she was employable at a sedentary-type level but cautioned that she start at not more than one-half day and work up to full employment.
The record establishes that the AIG adjuster never met face to face with Ms. Savoy and that a planned “status conference” between Dr. Bernauer, Ms. Savoy, and the AIG claims adjuster never took place because of AIG’s failure to timely pay for the meeting.
The record also shows that no job action was pursued by AIG on Ms. Savoy’s behalf after Dr. Bernauer’s letter of July 12, 2000, in which he stated that Ms. Savoy had reached maximum medical improvement.
The workers’ compensation judge reinstated Ms. Savoy’s indemnity benefits [¿retroactive to the date they were terminated. However, she refused to assess penalties and attorney’s fees in connection with their discontinuance. She also ordered that Defendants authorize the MRI requested by Dr. Bernauer in May 2000 and ordered Defendant to pay a penalty of $1,000.00 and attorney’s fees of $2,000.00 for refusing to authorize the MRI.
Subsequently, as noted above, Defendant perfected a timely appeal and Claimant filed a timely answer to Defendant’s appeal.
*976 LAW AND DISCUSSION
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-C-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556, the supreme court reviewed the standard of appellate review in workers’ compensation cases stating the following:
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Freeman [v. Poulan/Weed Eater ], 93-1530 at p. 5 [ (La.1/14/94) ], 630 So.2d [733] at 737-738; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, “if the [factfinder’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
After reviewing the record, particularly the adjuster’s activity notes, Dr. Ber-nauer’s records, and the various letters exchanged between all the parties to this suit, we cannot say that the conclusions reached by the workers’ compensation judge were clearly wrong.
Until Ms. Savoy undergoes the MRI requested by Dr. Bernauer in May 2000, the extent of her recovery will still be subject to speculation. Louisiana workers’ | ^compensation law gives great deference to the opinion of a treating physician when no real contradictory medical proof exists. Martin v. Red Simpson, Inc., 94-817 (La.App. 3 Cir. 2/1/95); 649 So.2d 1155. In this case there was no contradictory medical opinion. Furthermore, there was the report of Dr. Gunderson, who performed an IME, which questioned the integrity of Ms. Savoy’s fusion. Considering the facts surrounding the Defendant’s refusal to authorize this diagnostic procedure, we cannot say that the workers’ compensation judge’s ruling on this issue was unreasonable.
Further, we find the reinstatement of Ms. Savoy’s benefits retroactive to the date of their discontinuance “reasonable in light of the record reviewed in its entirety.” Thus, in accordance with the standards of appellate review, that finding must be affirmed.
Ms. Savoy answered Defendant’s appeal questioning the amount of the penalty assessed in connection with Defendant’s refusal to authorize the MRI requested by her treating physician. It is well settled that under La.R.S. 23:1201, sanctions, in the form of penalties and attorneys fees, are available when an employer or insurer has failed to fulfill its duty to furnish medical benefits. La.R.S. 23:1201(F) states:
Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
AIG refused to authorize the requested MRI in May 2000. That request remains denied at this time. Under the provisions *977 of La.R.S. 23:1201(F) the penalty |fithe workers’ compensation judge should have assessed was $2,000.00. We amended her award to that amount.
Finally, Claimant prays that the award of attorney’s fees be increased to cover the legal expenses incurred as a result of Defendant’s appeal. We increase the award of attorney’s fees to $4,000.00.
Accordingly, for the reasons stated above, we amend the judgment of the workers’ compensation judge to increase Ms. Savoy’s award of penalties to $2,000.00 and to increase the attorney’s fees awarded to $4,000.00. In all other respects, the judgment of the workers’ compensation judge is affirmed. Defendant/Appellant is cast with all costs of this appeal.
AFFIRMED AS AMENDED.

. It is of note that benefits were terminated on April 12, 2000, but that Dr. Bernauer did not see Ms. Savoy until April 14, 2000, and that his letter to AIG following that visit was not received by AIG until April 25, 2000.