840 So.2d 1181 (2003)
Ronald Joseph AUTHEMENT
v.
SHAPPERT ENGINEERING and St. Paul Fire & Marine Insurance Company.
No. 2002-C-1631.
Supreme Court of Louisiana.
February 25, 2003.
Rehearing Denied April 25, 2003.
*1182 Michael J. Samanie, Houma, Stephen S. Stiplecovich, for Applicant.
Frank R. Whiteley, III, Metairie, for Respondent.
WEIMER, Justice
This matter comes before the court on the issue of whether the failure of a workers' compensation carrier to authorize prepayment requested by a doctor prior to examination of a workers' compensation claimant is a failure to provide payment of medical benefits such that penalties are triggered. See LSA-R.S. 23:1201(E) & (F) and 23:1203(A). Additionally we are called upon to resolve a split in the circuits regarding whether a failure to authorize a medical procedure for an employee otherwise eligible to receive workers' compensation benefits is deemed to be a failure to *1183 provide compensation benefits such that penalties can be imposed. Based on the facts and circumstances of this case, we reverse the court of appeal and reinstate the decision of the worker's compensation hearing officer in favor of the employee imposing penalties and attorney fees.

FACTS AND PROCEDURAL BACKGROUND
In May of 1997, the claimant sustained a work related injury to his right ankle following which he was treated by multiple health care providers. He underwent two surgical procedures and participated in physical therapy. During December 1999, the claimant filed a disputed claim for compensation alleging that St. Paul Fire & Marine Insurance Co. (St.Paul), the employer's workers' compensation carrier, refused to authorize certain testing and treatment as recommended by the treating physician. In the petition, he sought penalties, attorney fees and litigation expenses. The defendants answered denying that any benefits were due.
The record reflects that during November 1999, Dr. James Laskey, a podiatrist, recommended treatment by an orthopedist. The claimant chose Dr. Christopher Cenac as his treating orthopedist[1] and was seen by him for the first time on January 5, 2000. On that date, Dr. Cenac recommended that a functional capacity evaluation be completed and following that evaluation, recommended that Mr. Authement see a foot and ankle specialist such as Dr. Robert Dehne[2] at the LSU Medical School.
As early as January 25, 2000, plaintiff's counsel communicated with St. Paul asserting a formal demand to make appropriate financial arrangements for Mr. Authement to be examined by Dr. Dehne as soon as possible.
By letter dated February 11, 2000, St. Paul authorized the functional capacity evaluation recommended by Dr. Cenac on January 5. By letter dated February 15, 2000, Dr. Cenac informed St. Paul that the functional capacity evaluation was scheduled for March 1, 2000. In that letter Dr. Cenac wrote, "Please communicate with my office relative to the recommendation for the patient to be seen by Dr. Robert Dehne at LSU Medical School."
On March 27, 2000, plaintiff amended his disputed claim for compensation seeking evaluation by Dr. Dehne as recommended by Dr. Cenac.
On May 4, 2000, defense counsel wrote to plaintiff's counsel stating that there was no objection to Mr. Authement seeing Dr. Dehne. Mr. Authement was advised to make an appointment and have Dr. Dehne call defense counsel's office for approval.
The next day, on May 5, 2000, counsel for Mr. Authement wrote to counsel for St. Paul advising that Dr. Dehne required a $750 prepayment. The letter requested that payment be made as soon as possible so that Mr. Authement could be seen by Dr. Dehne. Then again, on June 22, 2000, by letter to counsel for St. Paul, plaintiff's counsel indicated that pursuant to a discussion on June 21, it was his understanding that St. Paul agreed to authorize treatment by Dr. Dehne at LSU. The letter again requested that St. Paul forward advance *1184 payment of $750 directly to the doctor.
On July 21, 2000, the day the matter was initially set for trial,[3] counsel for defendant provided plaintiff's counsel with a report from Dr. Cenac dated March 20, 2000. The report recommended that Mr. Authement see a surgical podiatrist such as Dr. Robert Dehne or alternatively, Dr. Waybrun Hebert. This report indicates that as early as March 20, 2000, the insurer was given the choice of two specialists recommended by Dr. Cenac. However, the claimant had not been previously provided with the name of the alternate specialist. Meanwhile, he was unable to see Dr. Dehne, because Dr. Dehne required a $750 prepaid deposit prior to the examination and the employer/insurer would not provide the prepayment.
On July 24, 2000, defense counsel finally wrote to claimant's counsel that the surgical podiatrist chosen by claimant, Dr. Dehne, refused to treat the patient within the payment structure set in the workers' compensation reimbursement schedule. A suggestion was made that claimant could choose Dr. Hebert, an alternate surgical podiatrist, as his treating physician.
Immediately, Mr. Authement made an appointment with Dr. Hebert who first treated him on July 26, 2000, and continued to treat him through November 2000.
The parties proceeded to a trial on the merits on February 12, 2001. The issue before the court was whether the insurer was arbitrary and capricious and thus liable for attorney fees and penalties for its failure to comply with Dr. Cenac's recommendation of January 5, 2000, that Mr. Authement be seen by a specialist such as Dr. Robert Dehne.
The morning of the trial, the parties agreed to submit the matter on briefs. They also agreed that the letters exchanged between counsel and the doctors' reports would be attached to the briefs and submitted as evidence.
On February 23, 2001, the court rendered judgment in favor of Mr. Authement and against Shappert Engineering finding the employer's actions were "arbitrary, capricious and without probable cause in failing to authorize medical treatment in this matter." The court awarded penalties in the amount of $2,000 and attorney fees in the amount of $7,000. Defendants perfected a suspensive appeal.
The court of appeal, relying on a prior holding of the First Circuit,[4] determined that failure to authorize treatment does not equate to failure to provide payment. The court held that the workers' compensation hearing officer erred in finding that the employer's action resulted in liability for penalties and attorney fees. The court of appeal disagreed with claimant's argument that penalties and attorney fees applied at least from the time the employer authorized treatment, but refused to prepay Dr. Dehne's fee. The court held the employer is statutorily obligated to reimburse the claimant for necessary medical treatment, but is not required to prepay medical expenses.
Additionally, the court examined the provisions of LSA-R.S. 23:1142 which provides *1185 for attorney fees if the employer arbitrarily and capriciously denies consent to incur more than $750 for any non-emergency diagnostic testing or treatment and found that the statute does not provide for the imposition of a penalty. Since there was no proof that treatment would exceed $750, the court found this statute did not apply.[5]Authement v. Shappert Engineering, XXXX-XXXX (La.App. 1 Cir. 5/10/02), 818 So.2d 928.
We granted a writ to consider the split in the circuits.[6]

DISCUSSION
In this matter, the appellate court reasoned that "a `failure to authorize medical treatment' does not equate to a `failure to provide payment' as set forth in La. R.S. 23:1201(F)" and, thus, does not result in liability for penalties and attorney fees. Authement, XXXX-XXXX at 4-5, 818 So.2d at 931. The court concluded that the workers' compensation hearing officer erred in reasoning that the failure to authorize medical treatment in this matter resulted in liability for penalties and attorney fees and reversed the judgment of the workers' compensation hearing officer. Additionally, relying on Howard v. Our Lady of the Lake Regional Medical Center, 99-1826 (La.App. 1 Cir. 9/22/00), 768 So.2d 293, 297-298, the court found the obligation of the employer or insurer is that of reimbursement. Pursuant to Howard, the court found that the employer was not required to prepay a medical expense.
Review of the jurisprudence indicates all other circuits recognize that the failure to authorize a medical procedure for an employee eligible to receive workers' compensation is deemed to be the failure to furnish compensation benefits warranting penalties and attorney fees under LSA-R.S. 23:1201.
In Sims v. Sun Chemical Corporation, 34,947 (La.App. 2 Cir 8/22/01), 795 So.2d 439, 441, the Second Circuit found that defendants' refusal to authorize the initial surgical procedure was a violation of its duty to provide medical care pursuant to LSA-R.S. 23:1203(A). Relying on Howard, supra, appellants argued that the obligation to furnish medical treatment was limited to reimbursement, therefore, only the failure to provide payment would subject the employer to penalties and attorney fees. However, the Second Circuit, citing previous opinions of that court,[7] held that absent a finding that the claim was reasonably controverted, an employer's failure to authorize a medical procedure for an employee eligible to receive workers' compensation is deemed to be the failure to furnish compensation warranting penalties and attorney fees.
In Savoy v. Double Diamond Casino, 2002-25 (La.App. 3 Cir. 5/8/02), 816 So.2d 973, the Third Circuit affirmed the award for penalties for failure to authorize an MRI recommended by plaintiff's treating physician. The MRI had been requested in May 2000 and remained denied at the time of the appeal. The appellate court, *1186 citing the provisions of LSA-R.S. 23:1201(F), increased the award for penalties from $1,000 to $2,000 and increased the award for attorney fees from $2,000 to $4,000 to cover the appeal.
Similarly, in Gross v. Maison Blanche, Inc., 98-2341 (La.App. 4 Cir. 4/21/99), 732 So.2d 147, the Fourth Circuit upheld an award for penalties and attorney fees for the refusal to authorize medical treatment which was reasonable and necessary.
In Adams v. Bayou Steel Corporation, 01-1392 (La.App. 5 Cir. 4/10/02), 813 So.2d 1285, the Fifth Circuit held that the employer's failure to authorize a medical procedure for a claimant otherwise eligible to receive workers' compensation is deemed to be the failure to furnish compensation benefits triggering the penalty provisions.
In this matter, the carrier eventually authorized Mr. Authement to see Dr. Dehne. However, the authorization was not made until May 4, 2000, despite the initial recommendation by Dr. Cenac on January 5, 2000, and requests in the interim that Mr. Authement see Dr. Dehne. Thus, four months lapsed between the initial recommendation of Dr. Cenac and the eventual authorization.[8] Nothing in the record establishes a justification for this delay in authorization. Further, there was an alternative recommendation by Dr. Cenac that Dr. Hebert was available to treat Mr. Authement. This alternative recommendation was not shared with Mr. Authement until July 24, 2000. Meanwhile, Mr. Authement went without treatment by a recommended specialist for over seven months.
While the workers' compensation statute does not address a failure to authorize medical treatment as such, we find the position taken by the Second, Third, Fourth, and Fifth circuits more reflective of the benevolent goals of the workers' compensation law to ensure prompt medical attention to injured workers.
Additionally, we note that the title of a statute may be instructive in determining legislative intent. Green v. Louisiana Underwriters Insurance Company, 571 So.2d 610 (La.1990). The title to LSA-R.S. 23:1201 now states: "Time and place of payment; failure to pay timely; failure to authorize; penalties and attorney fees." (Emphasis added.)
The legislature amended LSA-R.S. 23:1201 by 1995 La. Acts No. 1137, § 1, effective June 29, 1995. "Failure to pay timely" and "failure to authorize" as well as "attorney fees" were added to the title as part of the amendment. Subsection E providing a time frame for payment of medical benefits was also added. Although the language of the statute itself is not instructive regarding the consequences of a failure to authorize medical treatment, with the addition of "failure to authorize" in the title, the legislature apparently contemplated that a failure to authorize medical treatment would be a consideration in determining whether to subject the payor to penalties. Louisiana Revised Statute 23:1201(F)(2) states, in part, that the penalty and attorney fee provisions "shall not apply if the claim is reasonably controverted." Based on this language, a penalty and attorney fee can be imposed for the failure to authorize treatment except where "the claim is reasonably controverted."
One purpose of the workers' compensation statute is to promptly provide compensation and medical benefits to *1187 an employee who suffers injury within the course and scope of employment. The employer is obligated to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." LSA-R.S. 23:1203(A). Thus, we conclude that a failure to authorize treatment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment.
A related issue in this matter concerns the compensation carrier's failure to authorize prepayment for medical services. Medical benefits shall be paid within 60 days after the employer or insurer receives written notice thereof. LSA-R.S. 23:1201(E). There is no requirement in LSA-R.S. 23:1201(E) that the services be rendered before payment. Although prepayment may not be the usual method of payment for services, it is not prohibited. Under LSA-R.S. 23:1142(B)(1) a health care provider may not incur more than $750 in non-emergency diagnostic testing or treatment without the consent of the entity responsible for paying the medical expense and the employee. Dr. Dehne's request was for $750.
Based on the facts of this case, there were no restrictions imposed on the authorization for Mr. Authement to see Dr. Dehne. Nothing in the authorization sent by the attorney for the workers' compensation carrier indicated any limitation related to reimbursement or that Dr. Dehne would require prepayment or that the claimant would advance the funds.[9] After the employer unconditionally authorized examination by Dr. Dehne, the refusal to prepay the charge was a "failure to provide payment." LSA-R.S. 23:1201(F).
On the day following notification that the request to see Dr. Dehne was authorized, plaintiff's counsel sent a letter to defense counsel indicating that Dr. Dehne requested prepayment of $750 prior to examination. It is critical to note that from May 4 to July 24, nothing was done by the insurance carrier to facilitate examination of Mr. Authement by Dr. Dehne. Significantly, the insurer never informed claimant that he could not be treated by Dr. Dehne because the doctor required prepayment and/or was unwilling to treat him within the reimbursement schedule set by the workers' compensation statute. Eighty days passed before the insurer notified Mr. Authement that he could not see Dr. Dehne. Revised Statute 23:1201(E) requires that medical benefits be paid within 60 days after written notice.
The defendants, citing Howard, supra, contend that LSA-R.S. 23:1201(F), when read in conjunction with LSA-R.S. 23:1203(B), only obligates the employer or insurer to reimburse a claimant for necessary medical treatment and there is no obligation to prepay a medical expense. Although LSA-R.S. 23:1203(B)[10] mentions *1188 "reimbursement," it is clear from the context that this is not a reference to an obligation to prepay or reimburse a claimant's medical expenses. Rather, this provision states that the obligation of an employer to pay medical expenses is limited to the lesser of an amount determined under the reimbursement schedule published annually pursuant to LSA-R. S. 23:1034.2[11] or the actual charge. Thus, "reimbursement" in the context of LSA-R.S. 23:1203(B) references a limitation on the amount the employer must pay for medical expenses. Revised Statute 23:1202(B) merely applies the "reimbursement schedule" to the obligation to furnish medical and related expenses. See 13 H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 287 n. 39 at 721 (4th ed.2002). This provision has no application to the prepayment versus reimbursement of medical expenses issue raised in this matter. Instead of LSA-R.S. 23:1203(B), the applicable provisions are LSA-R.S. 23:1201(E) & (F) and LSA-R.S. 23:1203(A). None of these provisions limits the obligation of the employer to pay medical expenses to reimbursement of those expenses.
In sum, the insurer delayed authorization for four months. Thereafter, the insurer authorized the medical treatment, but failed and refused to authorize the payment so that the treatment could be provided. Defendants essentially argue that once treatment was authorized, their responsibility was complete. However, LSA-R.S. 23:1201(E) requires that medical benefits shall be paid within 60 days after notice. Revised Statute 23:1201(F) imposes a penalty for "failure to provide payment." A failure to provide payment is precisely what occurred in this matter. The workers' compensation carrier failed to provide payment for over 80 days and failed to respond although the carrier had notice of another doctor who was apparently prepared to see the claimant without the prepayment. Meanwhile, the employee was deprived of treatment for that entire time.
The workers' compensation scheme was not designed for the worker to pay the costs of his medical treatment. It is the obligation of the employer to pay for the cost of medical services, not the obligation of the employee. The employee should not be denied treatment because a controversy exists as to who will advance costs so that treatment will be rendered.
As stated in Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46, awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature. The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers. The crucial inquiry in determining whether to impose penalties and attorney fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action. Id.
The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact. Factual findings are subject to the manifest error or clearly wrong *1189 standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. The record available to the workers' compensation hearing officer contained sufficient factual information from which to conclude the employer/insurer failed to provide medical treatment as recommended by the claimant's treating physician. Failure to authorize medial treatment equates to failure to provide benefits in accordance with the provisions of the workers' compensation law. Failure to prepay the medical expenses under the facts and circumstances of this case was a failure to provide payment, thus triggering the imposition of penalties and attorney fees.

CONCLUSION
For the foregoing reasons, we find the workers' compensation hearing officer did not abuse his discretion in awarding penalties and attorney fees. We reverse the judgment of the court of appeal and reinstate the judgment of the workers' compensation hearing officer. Defendants are cast with all costs of this proceeding.
REVERSED; WORKERS' COMPENSATION JUDGMENT REINSTATED.
TRAYLOR, J., dissents in part and assigns reasons.
VICTORY, J., dissents and assigns reasons.
VICTORY, J., dissenting.
I cannot agree with the majority's conclusion that an employer's failure to prepay medical expenses will trigger the penalty provision of La. R.S. 23:1201(F). With respect to the holding on that issue I agree with the sentiments expressed by Justice Traylor in his dissent.
Furthermore, I cannot agree with the majority's conclusion that penalties and attorney's fees can be imposed on an employer under La. R.S. 23:1201(F) for an employer's failure to authorize medical treatment.
The statute as issue, La. R.S. 23:1201(F), states, in pertinent part:
Failure to provide payment in accordance with this section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney's fees for each disputed claim[.] (emphasis added)
At the very core of legislative interpretation we are guided by Articles 9 and 11 of the Civil Code. Article 9 states, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." I fail to understand what is unclear and ambiguous about applying a provision which states, "If X does not pay timely, then he will be subject to a penalty." Also, with respect to whether this law will lead to absurd consequences, it must be remembered that it is the application which should not lead to absurd consequences and not the non-application of a law. Notwithstanding this distinction, it is entirely within the province of the legislature to decide in what instances a law should be applied, and it must be presumed that the legislature had a good reason for only penalizing non-payments as opposed to non-authorizations for medical treatment.
Article 11 states, "[t]he words of law must be given their generally prevailing meaning." Surely it could not be said with any seriousness that the generally prevailing *1190 meaning of "payment" is synonymous with the generally prevailing meaning of "authorize."
The basis for the majority's holding that a failure to authorize medical benefits equates to a failure to pay for medical benefits is that in 1995 the words "failure to authorize" were added to the title of La. R.S. 23:1201(F). From this, the majority concludes that the legislature "apparently contemplated" that a failure to authorize medical treatment would trigger the penalty provisions of La. R.S. 23:1201(F). If that is so, why did the legislature, when amending the title and other subsections of La. R.S. 23:1201, not simply add the words "or authorization" after the words "[f]ailure to provide payment" in subsection F of the statute? The legislature is fully aware that the title to a statute is not the law, and if they had intended to include failures to authorize medical treatment within the ambit of La. R.S. 23:1201 they would have included such in the text of the statute.
The majority opinion not only violates the most basic rules of legislative interpretation, but also completely disregards the well established, judicially created rules which have been specifically tailored to the situation before us. (1) Workers compensation statutes are to be liberally construed; however, when a provision is penal in nature, it must be strictly construed, Williams v. Rush Masonry, Inc., 737 So. 2d.41 (La.1999), and (2) in order to determine the object of a statute, the title may be considered, though it cannot be used to enlarge the text. Melancon v. Mizell, 216 La. 711, 44 So.2d 826 (1950) (emphasis added).
As judges, ours is not to create the law, rather it is to apply the law according to the intent of the legislature, a principle recently reiterated by this court. Smith v. Southern Holding, Inc., 839 So.2d 5, (La. 2003). We have several rules, some legislative and some judicial, which we are bound to follow in order to adhere to this principle. Unfortunately, the majority has chosen to ignore these rules in reaching its result.
For these reasons, I respectfully dissent.
TRAYLOR, Justice, dissenting in part.
While I agree with the majority that the plaintiff is entitled to attorney fees and penalties for the employer's failure to authorize treatment with Dr. Dehne for four months and the failure to authorize a functional capacity evaluation for forty days, I dissent from the portion of the majority's opinion which determines that an employer's refusal to prepay medical services is a failure to authorize under La. Rev. 23:1201(E). The statute requires that medical benefits "shall be paid within sixty days after the employer or insurer receives written notice thereof." Furthermore, under the Workers' Compensation Act, an employer's liability for such payments is set out in La.Rev.Stat. 23:1034.2 and is explicitly deemed to be for the "reimbursement" of medical expenses. Both the word "paid" and "reimbursement" set forth in the Act contemplate that services are payable after they have been actually incurred, not that an employer be required to prepay for services to be rendered in the future. Moreover, in my view, the employer authorized the plaintiff to treat with Dr. Dehneit was the doctor who refused to treat the plaintiff without a prepayment of $750. Dr. Dehne later completely refused to treat plaintiff under the reimbursement schedule set forth in the Act. Accordingly, I dissent from the portion of the opinion which would allow such a prepayment.
NOTES
[1] Prior to that time, claimant had treated with Dr. Gary Guidry, an orthopedist he claims was chosen by the employer.
[2] In the letter from Dr. Cenac to St Paul dated January 5, 2000, Dr. Dehne is referred to as Dr. Robert Dana, a specialist in foot and ankle injuries. All subsequent references are to Dr. Dehne, who is apparently the same person.
[3] The trial was continued to a later date.
[4] See Howard v. Our Lady of the Lake Regional Medical Center, 99-1826 (La.App. 1 Cir. 9/22/00), 768 So.2d 293, 297-298. The court of appeal acknowledged contrary holdings in other circuits, citing Sims v. Sun Chemical Corporation 34,947 (La.App. 2 Cir. 8/22/01), 795 So.2d 439, 441; George v. Guillory, 00-00591 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1208-1209; and Gross v. Maison Blanche, Inc., 98-2341 (La.App. 4 Cir. 4/21/99), 732 So.2d 147, 151. These cases will be discussed infra.
[5] Based on our resolution of this matter, we are not called upon to address the provisions of LSA-R.S. 23:1142, which were discussed by the court of appeal. We express no opinion regarding the evaluation of this provision by the court of appeal.
[6] Authement v. Shappert Engineering and St. Paul Fire & Marine Ins. Co., 02-1631 (La.10/25/02), 827 So.2d 1175.
[7] See Gay v. Georgia Pacific Corporation, 32,653 (La.App. 2 Cir. 12/22/99), 754 So.2d 1101; Roach v. Eagle Water, Inc., 31,912 (La. App. 2 Cir. 5/5/99), 737 So.2d 182; Fisher v. Lincoln Timber Co., 31,430 (La.App. 2 Cir. 1/24/99), 730 So.2d 973; and Ward v. Phoenix Operating Co., 31,656 (La.App. 2 Cir. 2/24/99), 729 So.2d 109.
[8] The record also reflects a delay of forty days between the original recommendation by Dr. Cenac for a functional capacity evaluation of Mr. Authement and the insurer's authorization for that examination.
[9] The court of appeal suggests that Mr. Authement was free to pay the $750 required to see Dr. Dehne and then submit a reimbursement claim. This presupposes an injured worker has the financial ability to advance these funds. However, it is not the injured worker's obligation to pay the medical expenses. Rather, it is the employer's obligation. LSA-R.S. 23:1203(A).
[10] LSA-R.S. 23:1203(B) provides:

The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, whether in state or out of state, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less. Any out-of-state provider is also to be subject to the procedures established under the office of workers' compensation administration utilization review rules.
[11] LSA-R.S. 23:1034.2 provides for the establishment and promulgation of a "reimbursement schedule" for medical expenses.