STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

DAVID WALL

VERSUS

AVOYELLES CORRECTIONAL CENTER

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT # 2
PARISH OF RAPIDES, NO. 03-07673
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

AFFIRMED.

James E. Calhoun
Asst. Attorney General
P. O. Box 1710
Alexandria, LA 71309
Counsel for Defendant/Appellant:
    Louisiana Department of Justice,
    Division of Risk Litigation

Jay A. Pucheu
Attorney at Law
P. O. Box 310
Marksville, LA 71351
Counsel for Claimant/Appellant:
    David Wall

Pickett, J.

The claimant, David Wall, appeals a judgment of a Workers' Compensation Judge (WCJ) denying his petition for the award of penalties and attorney's fees in connection with his allegation that the defendant, the Avoyelles Correctional Center, was late in paying indemnity benefits . We affirm the judgment of the WCJ.

**FACTS**

The claimant was injured on February 16, 2002, when the horse he was riding was "spooked" and began to spin and buck. It was stipulated that the claimant's injury was in the course and scope of his employment with the defendant and that he was paid the proper amount of indemnity following the accident. Subsequent to his injury the claimant underwent two back surgeries under the care of Dr. G. Andrew Wilson, a neurosurgeon. In August 2003, Dr. Wilson informed the claimant that he was leaving his medical practice in Louisiana and moving to Indiana. Since the claimant was still in need of medical care, Dr. Wilson suggested that the claimant be followed by another physician in the office. The claimant rejected this suggestion and sought to have Dr. Anil Nanda, a neurosurgeon in Shreveport, substituted as his choice of neurosurgeons. For reason which will be discussed below, that never happened. A new neurosurgeon was not approved by the defendant until February 2004. That neurosurgeon, Dr. Patrick Taylor, performed a third surgery on the claimant.

The claimant filed a 1008, Disputed Claim For Compensation, on October 21, 2003. After attempts at mediation failed, the matter came to trial on September 8, 2004. Oral reasons for judgment were rendered, via telephone conference, on February 28, 2005, and a written judgment, in conformity with those reasons, was

1

signed on March 9, 2005. That judgment denied the claimant's request for penalties and attorney's fees for the alleged late payment of indemnity benefits and awarded the claimant penalties of $2,000.00 and attorney's fees of $2,000.00 for the defendant's arbitrary, capricious, and unreasonable failure to approve Dr. Nanda as the claimant's choice of neurosurgeon.

The defendant filed a motion for a new trial on March 18, 2005, and on April 19, 2005, the claimant filed a motion for a devolutive appeal. Thereafter, on May 2, 2005, the defendant filed a motion to dismiss the claimant's appeal as premature. Both of the defendant's motions were heard and denied on May 16, 2005, and a judgment to that effect was signed May 18, 2005. The defendant filed a motion for a suspensive appeal on May 23, 2005, seeking to appeal "the final Judgment rendered in the above . . . cause which was signed on May 18, 2005." After the appeal was lodged with this court, the defendant filed a motion to remand and correct the record noting that the original judgment was rendered March 9, 2005, not May 18, 2005, as recounted in the motion for suspensive appeal. This court chose not to remand.

## LAW AND DISCUSSION

As to the procedural aspects of this case, i.e., the untimely motion for appeal by the claimant and the defendant's inexpertly drafted motion for suspensive appeal, we note that in *McManus v. Southern United Fire Ins., et al.*, 00-1456, p. 6 (La.App. 3 Cir. 3/21/01), 801 So.2d 392, 396, this court stated: "We are cognizant that an 'appellate court shall render judgment which is just, legal, and proper upon the record on appeal.' La.Code Civ.P. art. 2164." Therefore, in the interests of judicial economy, and since the record before us contains sufficient evidence upon which to

2

determination all issues raised, and inasmuch as neither party will be prejudiced, we elect to proceed as if no procedural errors exist.

The first issue we address is the WCJ's award to the claimant of penalties and attorney's fees for the defendant's arbitrary, capricious, and unreasonable failure to approve Dr. Nanda as the claimant's choice of neurosurgeon. The record reveals that the defendant was informed that the claimant's treating neurosurgeon, Dr. Wilson, was closing his practice and leaving the state in August 2004. Thereafter, there was protracted communication between the claimant, Ms. Clara Martin, R.N., his case manager, Ms. Karen Wallace, Risk Management's claims adjuster, and the staff at Dr. Nanda's office. Ms. Wallace approved the claimant's choice of Dr. Nanda as his treating neurosurgeon, but refused to authorize the prepayment Dr. Nanda requested. While there is testimony in the record that Dr. Nanda would only see surgical patients, there is no evidence or testimony that he had refused to see the claimant. In fact, the doctor's office staff, communicated to both Ms. Martin and Ms. Wallace that the claimant would be given an appointment with Dr. Nanda as soon as the required $500.00 pre-payment was made. From her testimony, it appears that Ms. Wallace knew this and used the fact that Dr. Nanda only saw surgical patients as an excuse to deny authorization of the requested pre-payment. In other words, Dr. Nanda was never given the opportunity to examine the claimant to determine if he would accept the claimant as a patient, *i.e.*, if further surgery was necessary. This is very similar to the actions of the employer in *Authement v. Shappert Engineering*, 02-1631, pp. 8-9 (La. 2/25/03), 840 So.2d 1181, 1186-87 (footnote omitted)(emphasis ours), wherein the court stated:

> [W]e note that the title of a statute may be instructive in determining legislative intent. *Green v. Louisiana Underwriters Insurance*

3

*Company*, 571 So.2d 610 (La.1990). The title to LSA-R.S. 23:1201 now states: "Time and place of payment; failure to pay timely; *failure to authorize*; penalties and attorney fees." (Emphasis added.)

The legislature amended LSA-R.S. 23:1201 by 1995 La. Acts No. 1137, § 1, effective June 29, 1995. "Failure to pay timely" and "failure to authorize" as well as "attorney fees" were added to the title as part of the amendment. Subsection E providing a time frame for payment of medical benefits was also added. Although the language of the statute itself is not instructive regarding the consequences of a failure to authorize medical treatment, with the addition of "failure to authorize" in the title, the legislature apparently contemplated that a failure to authorize medical treatment would be a consideration in determining whether to subject the payor to penalties. Louisiana Revised Statute 23:1201(F)(2) states, in part, that the penalty and attorney fee provisions "shall not apply if the claim is reasonably controverted." Based on this language, a penalty and attorney fee can be imposed for the failure to authorize treatment except where "the claim is reasonably controverted."

One purpose of the workers' compensation statute is to promptly provide compensation and medical benefits to an employee who suffers injury within the course and scope of employment. The employer is obligated to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." LSA-R.S. 23:1203(A). Thus, we conclude that a failure to authorize treatment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment.

A related issue in this matter concerns the compensation carrier's failure to authorize prepayment for medical services. Medical benefits shall be paid within 60 days after the employer or insurer receives written notice thereof. LSA-R.S. 23:1201(E). *There is no requirement in LSA-R.S. 23:1201(E) that the services be rendered before payment. Although prepayment may not be the usual method of payment for services, it is not prohibited*. Under LSA-R.S. 23:1142(B)(1) a health care provider may not incur more than $750 in non-emergency diagnostic testing or treatment without the consent of the entity responsible for paying the medical expense and the employee. Dr. Dehne's request was for $750.

Based on the facts of this case, there were no restrictions imposed on the authorization for Mr. Authement to see Dr. Dehne. Nothing in the authorization sent by the attorney for the workers' compensation carrier indicated any limitation related to reimbursement or that Dr. Dehne would require prepayment or that the claimant would advance the funds. *After the employer unconditionally authorized examination by*

*Dr. Dehne, the refusal to prepay the charge was a "failure to provide payment."* LSA-R.S. 23:1201(F).

Not too long ago, this court had reason to apply the principles articulated in *Authement* stating:

> The failure to authorize a medical procedure [or to consent to the employee's request to select a treating physician or change physicians] is governed by La.R.S. 23:1201(F). *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181. . . .
>
> . . . Under Section 1201(F), both penalties and attorney fees may be awarded for the failure to provide timely payment of benefits or medical expenses, unless, as provided in Section 1201(F)(2), the claim is "reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." "Depending on the circumstances, a failure to authorize treatment is effectively a failure to furnish treatment" that can result in the imposition of penalties and attorney fees. *Authement*, 840 So.2d at 1187. "[I]n order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits." *Brown [v. Texas-LA Cartage*, 98-1063, (La. 12/1/98), 721 So.2d 885], 890.
>
> The decision to award penalties and attorney fees is a factual determination that will not be reversed on appeal absent a finding of manifest error. *Colonial Nursing Home v. Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La. 4/21/03), 841 So.2d 802.

*Stelly v. Health South Rehabilitation*, 03-171, pp. 11-12 (La.App. 3 Cir. 7/2/03), 854 So.2d 960, 967.

Inasmuch as the record establishes that Dr. Nanda was never provided with the claimant's medical records and never had a chance to examine either those records or the claimant, we can neither say the claim was reasonably controverted nor that the WCJ was clearly wrong in awarding the claimant penalties and attorney's fees for the defendant's failure to authorize treatment by Dr. Nanda.

The claimant also assigns as error the WCJ's refusal to grant penalties and attorney's fees for untimely payment of indemnity benefits. In *Hawkins v. State*

5

*through Dept. of Health*, 613 So.2d 229, 232 (La.App. 1st Cir. 1992) we find the following:

> La. Const. art. X grants legislative, executive and judicial powers to the State Civil Service Commission. Section 10(A)(1) provides for the Commission's executive and legislative powers:
>
>> Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service as herein established....

Louisiana Constitution Article 10, § 10(C) entitled Wages and Hours provides: "Any rule or determination affecting wages or hours shall have the effect of law and become effective only after approval by the governor or the appropriate governing authority."

> Civil Service Rule 15.2.1 provides:
>
> Payroll Periods and Timely Issuance of Paychecks Due to Classified Employees.
>
> (a) An appointing authority, the Commissioner of Administration on behalf of the Uniform Payroll System, or the head of any other payroll system responsible for issuing paychecks to classified employees, shall establish weekly, biweekly, semi-monthly, or monthly payroll periods. Use of any other pay cycles must be approved by the Director.
>
> (b) Paychecks due to classified employees shall be issued no later than seven calendar days following the end of the applicable payroll

6

> period unless approval is obtained from the
> Director under conditions established by him.

*Hawkins*, 613 So.2d at 232. Further, in *Kibodeaux v. Cajun Bag and Supply Co.*, 99-149, pp. 4-5 (La.App. 3 Cir. 6/2/99), 742 So.2d 582, 584, a panel of this court recounted as follows:

> Payments of compensation shall be made as near as possible to the time as wages were payable to the employee before the accident. La.R.S. 23:1201(A). The determination of whether an employer should be cast with penalties and attorney fees is a question of fact and the workers' compensation judge's findings shall not be disturbed on appeal absent manifest error [*citing Woolley v. CAS Refining, Inc.*, 94-648 (La.App. 3 Cir. 1/11/95), 651 So.2d 860, *writ denied*, 95-1158 (La. 6/16/95), 655 So.2d 331].

The WCJ in his oral reasons for judgment stated the following:

> Then we look at the Document "D-3," pay period for the year 2003, and this Court put this all onto a calendar so I could make a readily [sic] determination of this, and I agree with the position offered by the State in their brief. It appears that, actually, over the course of time, eventually, Mr. Wall began receiving his checks prior to the due date of his payroll check. And, actually, he was being paid in advance of the due date of his payroll check. And in the case of Kibodeaux versus Cajun Bag and Supply, [sic] 742 So.2d, Page 582, the only thing that's required is that an employer pay the injured worker his– as closely as reasonable -- as reasonably possible to he time of his paycheck. Well, of course, in this case, Mr. Wall never missed a paycheck hi-weekly according to his own testimony. A review of the records indicate, in fact, he began receiving his compensation check prior to the date his paycheck was due. There are no penalties or attorney's fees due for any alleged payment alleged late payment of indemnity benefits.

Our review of the record confirms the WCJ's observation—Mr. Wall testified that before he was injured, he received his checks bi-weekly, and after he was injured, he still received his checks bi-weekly. He stated that he never missed a check.

Accordingly, for the reasons stated, the judgment of the WCJ is affirmed. Each party is to bear his own cost on appeal.

**AFFIRMED.**