BROWN, C.J.
hln this case, an employee filed a claim for workers’ compensation alleging an occupational disease. The claimant asked that the employer pay for an initial evaluation by a physician and diagnostic tests. The claimant presented no evidence to support the existence of an occupational disease or that such a disease was job-related. The employer refused to pay, asserting that the claimant must first substantiate that he has such a disease and that it was job-related. The Office of Workers’ Compensation (“OWC”) ordered the employer to pay. The employer’s application for supervisory review was granted by this court. We now affirm the OWC ruling.

Facts and Procedural History

The claimant, Michael Douglas, has worked as a bartender at the Isle of Capri Casino since 1994. In March 2005, Douglas filed a disputed claim for workers’ compensation alleging that he had developed a foot ulcer caused by long hours of standing at his job. On June 10, 2005, Douglas filed an amended claim asserting that he had also developed carpal tunnel syndrome (“CTS”) as a result of his job. Under the compensation act, CTS is classified as an occupational disease. As to the CTS, the employer refused to pay for a medical evaluation or diagnostic tests.
Douglas sought an expedited hearing. Claimant asserted that his CTS was work-related and that he was entitled to see an orthopedist of his choice and have related diagnostic tests at the Isle of Capri’s expense. Defendant argued that Douglas should have to obtain, at his own expense, *952 proof that he has CTS and that this condition is work-related. According to the Isle of Capri, the OWC must first determine that Douglas has CTS that is workjrelated2 before it can compel defendant to pay for a diagnosis and treatment. At the hearing, neither party offered any evidence regarding Douglas’s condition.
The OWC concluded that claimant is entitled to be evaluated by his choice of orthopedist. The court ordered the Isle of Capri to pay for the doctor visit and any associated diagnostic tests. The Isle of Capri seeks review of that judgment.[1]

Discussion

La. R.S. 23:1031.1 provides, in part:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section. (Emphasis added).
In Fite v. Louisiana Title Co., 36,393 (La.App.2d Cir.10/24/03), 859 So.2d 259, 261, writ denied, 03-3230 (La.02/20/04), 866 So.2d 829, this court held:
13A claimant asserting an occupational disease must prove by a preponderance of evidence that there is a disability which is related to an employment-related disease, that the disease was contracted during the course of employment and that the disease is a result of the work performed. The causal link between an employee’s occupational disease and work-related duties must be established by a reasonable probability. The claimant will fail if there is only a possibility that the employment caused the disease, or if other causes not related to the employment are just as likely to have caused the disease. Expert testimony is required to support a finding of an occupational disease. (Citations omitted).
La. R.S. 23:1203 provides that the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal. La. R.S. 23:1121(B)(1) makes mandatory an employee’s right to select a treating physician.
Under some circumstances, the employer may be required to prepay for medical services. As noted by the supreme court in Authement v. Shappert Engineering, 02-1631 (La.02/25/03), 840 So.2d 1181, 1188:
The workers’ compensation scheme was not designed for the worker to pay the costs of his medical treatment. It is the obligation of the employer to pay for the *953 cost of medical services, not the obligation of the employee. The employee should not be denied treatment because a controversy exists as to who will advance costs so that treatment will be rendered.
Defendant does not dispute that it refused to pay for the initial evaluation of Douglas by a physician of his choice. With the Isle of Capri’s assertion that Douglas must first prove that he has CTS and that its causation stems from his work, we disagree. Although a disputed claim for benefits is not evidence that a claimant actually suffers from a work-related injury, the bare claim is sufficient to commence the fact-finding process. |4The most important facts in an occupational disease claim are the nature and origin of the claimant’s disease, if any.
In cases involving an obvious injury or trauma, there will not ordinarily be a dispute about the employee’s right to initial diagnosis or treatment; indeed, both are often done on an emergency basis immediately after the injury. Occupational diseases present less obvious symptoms to an observer than do traumatic injuries. Expert testimony is required in order for an employee to prove the existence of an occupational disease. An employer’s reluctance to provide diagnostic medical services for a worker who has a complaint that may prove to be an occupational disease is obviously tied to a desire not to facilitate an admission or finding of liability. Unless the employee is allowed an initial examination, a worker with an occupational disease who cannot afford to see a doctor would be prevented from proving the fact and origin of his disease. Thus an employer could avoid its compensation obligation entirely by refusing to pay for the evaluation of an employee who cannot himself afford to advance the cost of the evaluation.
An employer has a safeguard in the misrepresentation statute which is broadly worded to encompass any deliberate false statement or misrepresentation made to anyone, including the employer, physician or insurer, to obtain benefits. An employee who misrepresents his claim risks losing his entitlement to benefits. La. R.S. 23:1208(A). In particular, an employee who commits fraud in order to obtain benefits may owe reimbursement to the employer under La. R.S. 23:1208(D). These penalty | ^provisions provide protection for employers against frivolous demands by employees for evaluations.
In cases where an employee has made a formal claim for compensation for an occupational disease, we hold that the OWC is empowered by La. R.S. 23:1203 to order an employer or insurer to pay the cost of the initial visit by an employee with a physician of the claimant’s choosing prior to the presentation of proof by the employee that he suffers from an occupational disease. This authority includes the power to order the responsible party to pay for related, appropriate, and reasonable diagnostic testing.

Conclusion

The judgment of the Office of Workers’ Compensation is affirmed. Costs of this proceeding are assessed to the Isle of Capri Casino.
AFFIRMED.

. In its oral ruling, the OWC judge awarded Douglas penalties of $500 and attorney fees of $500. The written order, however, does not include such an award and neither party has addressed this issue on appeal.