968 So.2d 919 (2007)
M'Lee RUSSELL, Individually and on Behalf of Emma White, Plaintiff-Appellee
v.
HOUSE OF RAEFORD FARMS OF LOUISIANA, INC., Defendant-Appellant.
No. 42,676-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*921 Nelson, Zentner, Sartor, & Snellings, by George M. Snellings, IV, Monroe, for Appellant House of Raeford Farms of Louisiana.
Mayer, Smith & Roberts, by John C. Turnage, Shreveport, for Appellees M'Lee Russell and Emma White.
Tracy W. Houck & Assoc., by Tracy W. Houck, Ruston, for Appellee Esther McBroom Byrd.
Derrell McBroom, Sr., Pro Se Appellee.
Before STEWART, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
House of Raeford Farms appeals a judgment from the Office of Workers Compensation, District IW, Parish of Caddo, State of Louisiana, which awarded dependency benefits to M'Lee Russell and her minor child, Emma White. For the following reasons, we affirm.

FACTS
Derrell McBroom, Jr. was employed by House of Raeford Farms in Arcadia, Louisiana. On June 9, 2004, at House of Raeford Farms, he was shot and killed by a disgruntled ex-employee. At the time of McBroom's death, he was divorced, but had no children. As far as his immediate family, he was survived by his parents. When McBroom died, Russell and her child, Emma, lived with him in his home. House of Raeford Farms paid all of McBroom's funeral expenses and, pursuant to La. R.S. 23:1231(B)(2), paid each of his parents $75,000.00.
Russell was also an employee of House of Raeford Farms and had been employed by it and its predecessor since 1997. At the time of McBroom's death, Russell was a manager with the company. A year after McBroom's death, Russell quit her job with House of Raeford Farms. At the time she was earning approximately $40,000.00 a year.
In June 2005, House of Raeford Farms was served with Russell's 1008 Petition, wherein she sought workers compensation benefits as a result of McBroom's death. Russell claimed that she and her child were McBroom's dependents, despite the fact that she was unmarried to him and Emma was not his child. The matter was tried in the Office of Workers Compensation ("OWC") and it was stipulated that McBroom was killed in the course and scope of his employment. The OWC rendered judgment in favor of Russell and her child, ruling that Russell and Emma were entitled to indemnity benefits in the amount of $173.83 per week and $114.00 per week, respectively, from June 9, 2004, up to the date of trial (October 16, 2006) and continuing. The OWC further also ordered House of Raeford Farms to pay total penalties of $4,000.00 for failure to pay indemnity benefits to Russell and *922 Emma, in addition to $7,500.00 in attorney fees. House of Raeford Farms appeals this judgment, which M'Lee Russell has answered.

DISCUSSION
On appeal, House of Raeford Farms raises two assignments of error. First, it argues that the OWC erred in determining that Russell and her child, Emma, were dependents of McBroom at the time of his death. The appellant urges that Russell and her child were erroneously determined to be "other dependents" as contemplated by La. R.S. 23:1232(8), because they failed to prove they were dependent upon McBroom for support. We disagree.
The applicable statutes for death benefits in the workers compensation law are: La. R.S. 23:1231, which provides for weekly compensation to legal dependents who are "actually and wholly or partially actually" dependent upon his earnings for support at the time of death; La. R.S. 23:1232, which specifies the basis for computing the payment due to the various classes of dependents; and, La. R.S. 23:1252, which provides that, "the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of death. . . ." A claimant other than a spouse or child of the decedent must prove that the deceased employee was actually making contributions at the time of his death and that the claimant was totally or partially dependent on the contributions. However, the claimant does not have to show that he would have lacked the necessities of life without the support, only that he relied upon it to maintain his accustomed standard of living. Hurks v. Bossier, 367 So.2d 309 (La.1979); Hunt Plywood, Inc. v. Estate of Davis, 26,161 (La. App.2d Cir.10/26/94), 645 So.2d 248, writs denied, 1994-2871, 1994-2877 (La.01/27/95), 649 So.2d 388; Winn v. Thompson-Hayward Chemical Co., 522 So.2d 137 (La.App. 2d Cir.1988).
The question of actual dependency, in whole or in part, is a matter of proof with the onus resting upon the claimant. McDermott v. Funel, 258 La. 657, 247 So.2d 567 (1971). Therefore, it is the responsibility of a claimant to prove actual dependency upon the earnings of the decedent at the time of his death by a preponderance of the evidence. La. R.S. 23:1252.
After actual dependency has been shown, the question becomes whether the claimant totally or partially relied upon the decedent's assistance. Hunt Plywood, Inc., supra. Total dependency exists where an individual relies, for support, entirely upon contributions from the deceased employee. However, where that aid is only one of several sources from which the claimant derives support, the dependency will be classified as only partial. Id., citing, Malone and Johnson, 14 Louisiana Civil Law Treatise-Workers Compensation Law and Practice § 310 (2d ed.1980). Other sources of support do not preclude the award of compensation  a finding of partial dependency may be appropriate. Lathrop v. Hercules Transp., XXXX-XXXX (La.App. 1st Cir.1995), 666 So.2d 395.
Louisiana jurisprudence has firmly established the principle that actual dependency, in whole or in part, and the extent thereof, is a question of fact which must be proved by a preponderance of credible evidence. McDermott, supra; Castle v. Prudhomme Tank Truck Line, Inc., 417 So.2d 1205 (La.App. 1st Cir.1982), writ denied, 422 So.2d 423 (La.1982). Because dependency is a question of fact, the OWC's findings should not be disturbed on appeal absent manifest error or clear wrongness, even where a conflict in the *923 evidence exists. Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La.1992); Hunt Plywood, Inc., supra.
Moreover, and of particular relevancy to the facts at hand, the Louisiana Supreme Court previously noted that, "the status as concubine arises when a man and a woman live together in a permanent relationship as husband and wife, although without benefit of matrimony or a putative marriage." Henderson v. Travelers Ins. Co., 354 So.2d 1031, 1033 (La.1978). Noting that a concubine is a "wife without title," the Henderson court determined that a man and a woman living together in such a permanent relationship constituted a family for purposes of the workers compensation act. Id. In Henderson, it was noted that even a concubine's nephew, who was living in the household and was dependent on the wage-earner, could be entitled to benefits as a member of the family.
Here, because Russell was not favored with the presumption of dependency afforded a surviving spouse under La. R.S. 23:1251, she was relegated to the status of an "other dependent" under La. R.S. 23:1232(8).[1] Thus, it was incumbent upon Russell to prove her and her child's actual dependency (either total or partial) upon McBroom.
At the trial of the matter, the OWC heard testimony relative to Russell and Emma's dependency on McBroom. The record clearly reflects that before McBroom's tragic death, he and Russell had been involved in a permanent and loving relationship that was shortly going to culminate in their marriage. In fact, the evidence was consistent that the couple was planning to wed only ten days after McBroom was murdered, and Russell was wearing the engagement ring that McBroom had given her. Several witnesses, including Russell, testified that she and Emma had moved into McBroom's home where the child had her own bedroom and a playroom  Emma even had friends over to play at the residence. Prior to Russell moving into McBroom's residence, she testified that he had financed her move out of her prior matrimonial domicile and into an apartment in Ruston, Louisiana. There was also testimony that after Russell moved into McBroom's home, she had use of his expensive pickup truck. Further, the evidence at trial indicated that as a result of living with McBroom, Russell had the benefit of his utilities, insurance, furniture, appliances and other items. She also testified that prior to his death, the couple vacationed together when Emma was at her father's house. Finally, Russell also testified that she and McBroom were planning on soon building a home on some property he owned near the mobile home they lived in.
Here, in its judgment, the OWC correctly noted the standard of proof for a showing of actual dependency, noting that Russell had to show only that she relied on McBroom's contributions to maintain her accustomed mode of living. The OWC concluded that Russell had proven partial dependency on McBroom at the time of his death, noting the various witnesses it relied upon in reaching a conclusion. The OWC gave particular notice to the fact that the couple was scheduled to be married, *924 they had combined their two households, and that Russell and Emma had lived with McBroom 3 to 4 months prior to his death. Such findings clearly were within the trial court's discretion and were not an abuse of discretion. The record on review supports the determination that Russell and Emma were partially dependent on McBroom's contributions to maintain their accustomed standard of living, and the OWC was not in error in so finding. Additionally, noting Russell's assignment of error cited in her answer to the appeal, we do not find the award to be improperly low. The award of benefits stands as made by the OWC.
In its second assignment of error, appellant argues, in the alternative, that it should not have been assessed with penalties and attorney's fees. Specifically, House of Raeford Farms argues that it had no knowledge of Russell's relationship with McBroom, and it acted reasonably in not paying her benefits. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court's finding shall not be disturbed absent manifest error. Authement v. Shappert Eng'g, XXXX-XXXX (La.02/25/03), 840 So.2d 1181. The crucial inquiry in making this determination is whether the employer had an objective reason to deny benefits. Id. Here, we conclude that House of Raeford Farms did not have an objective reason to deny benefits to Russell and her child, and the penalties and attorney's fees were properly assessed.
Notably, we view as most convincing on this issue the testimony of Carolyn Grossman, the human resources manager at House of Raeford Farms. Of extreme significance is that Grossman, as human resources manager, was the local person that coordinated the company's employees. Grossman, a member of the company's management, testified that she knew Russell was living with McBroom and that she knew the couple was getting married-she even saw the engagement ring. Grossman even testified that other House of Raeford Farms "management" was aware the couple lived together, citing her boss, Bill Ovitt, as an example. Russell later testified that Ovitt, who she said was over Louisiana operations for the company, was a personal friend of McBroom's, and he knew the couple lived together. Further, Grossman described how Bill Lewis, the safety director from House of Raeford Farms' corporate office, came to Arcadia to investigate McBroom's death. According to Russell, Lewis offered her counseling after McBroom's death. Notably, during Russell's testimony, she described how she was called immediately after McBroom's shooting  obviously, the couple's relationship was well known enough to warrant an immediate call to her. Finally, we note the reality of the situation  two individuals in a small community both working for the same employer begin a romantic relationship. Both McBroom and Russell worked at House of Raeford Farms while they dated, lived together, and got engaged. Even without the direct testimony at trial that certain company personnel knew of the relationship, we find it unlikely that pertinent House of Raeford Farms personnel would not have known of the relationship.
Here, House of Raeford Farms urges that it acted reasonably upon McBroom's death in not paying benefits to Russell, because it had no knowledge of the extent of their relationship, let alone the fact that she and her child might have been dependent on him. We note, that even after Russell had filed her claim for compensation, House of Raeford Farms still refused to make any payments to her. Considering all the facts, it is unreasonable to think *925 that the relationship between the couple was not known of  at least to the extent to warrant an investigation into the exact terms of the relationship. Such would have been the reasonable expectation, which House of Raeford Farms failed to meet. We believe that House of Raeford Farms did not reasonably controvert Russell's claim, and the OWC's conclusion was not manifest error. See La. R.S. 23:1201 F. The OWC clearly acted within its discretion in assessing penalties and attorney's fees against House of Raeford Farms, which amounts were reasonable as well. So considering, we likewise will not increase the amount of either the penalties or the attorney's fees, as Russell has requested in her answer to the appeal. Moreover, Russell requests $3,000.00 in attorney's fees for the preparation involved in responding to the appeal by House of Raeford Farms. Considering the complexity of issues involved in this matter, we award $2,000.00 in additional attorney's fees to Russell for her defense of the appeal.

CONCLUSION
For the foregoing reasons, the judgment by the trial court against House of Raeford Farms and in favor of M'Lee Russell individually and on behalf of her child, Emma White is affirmed. Russell is awarded additional attorney's fees in the amount of $2,000.00 for her defense of the appeal. All costs of this appeal are also assessed to House of Raeford Farms.
AFFIRMED.
NOTES
[1] In the allocation of dependents enumerated in La. R.S 23:1232, parents are allocated benefits only in the event they are proven to be "dependent." McBroom's parents were voluntarily paid benefits under La. R.S. 23:1231(B)(2). House of Raeford Farms never made a showing, other than mere claims of his mother's dependency, that McBroom's parents were actually "dependent parents" entitled to the payment of benefits under La. R.S. 23:1232. Thus, Russell's status as an "other dependent" under subsection (8) is at issue.