857 So.2d 520 (2003)
Randy NUZUM Consolidated with Craig Brigalia
v.
TCI TURNER CORPORATION.
No. 2002 CA 1232.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
Order Granting Rehearing May 30, 2003.
*521 Leonard Cardenas, Baton Rouge, Counsel for Appellee/2nd Appellants Randy Nuzum and Craig Brigalia.
Terri Collins, Brent Bourgeois, Baton Rouge, Counsel for Appellant/2nd Appellees TCI Turner Corporation.
Before: FOIL, McCLENDON, and KLINE,[1] JJ.
KLINE, J.
In this workers' compensation action, the employer, TCI Turner Corporation ("TCI"), appeals a judgment in favor of claimants, Randy Nuzum and Craig Brigalia, whose claims were consolidated for trial. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Randy Nuzum and Craig Brigalia were both employed as pipefitters by TCI at the Marathon Oil Plant in Garyville, Louisiana. On January 19, 1998, both claimants suffered exposure to toxic chemical fumes during the course and scope of their employment at TCI. As a result of the exposure, both claimants suffered a number of medical problems, including upper and lower respiratory injuries, and claimed to be totally disabled. TCI paid indemnity benefits to both.
On February 15, 1999, claimants filed separate disputed claims for compensation with the Office of Workers' Compensation, basing their claims on TCI's refusal to authorize recommended medical tests and treatment, and TCI's refusal of their choice of physician. Claimants asserted that TCI failed and/or refused to pay for the evaluation and treatment by Dr. Thomas Callender, a medical toxicologist and/or occupational medical specialist. They also asserted that TCI further failed to pay for recommended diagnostic treatment and diagnostic testing and studies. Claimants alleged that, in addition to being entitled to payment of all medical treatment *522 by TCI, they were also entitled to penalties and attorney's fees since employer failed to reasonably controvert those claims and were arbitrary and capricious in denying payment.
TCI denied claimants' assertions and argued that it had already agreed to pay for treatment and evaluation by Dr. Callender to the extent that it was subject to the fee schedule and was reasonable and necessary. TCI alleged that Crawford & Company, third party administrator for TCI, was awaiting the appropriate insurance forms from Dr. Callender's office necessary to properly process the medical bills. TCI denied being arbitrary and capricious in its handling and processing of claimants' claims.
On November 20, 2000, the workers' compensation judge ("WCJ") ruled that the November 20, 2000 trial date be continued indefinitely and that the claims be stayed pending the outcome of claimants' third party tort action against Marathon Oil Company, subject to being reactivated upon request of either party. The third party action was dismissed in favor of Marathon Oil Company. On April 9, 2001, claimants filed a motion to re-open the case.
A trial on the merits was held on October 24, 2001. The matter was taken under advisement at that time by the WCJ and, following submission of post trial memoranda on behalf of the parties, an oral ruling was issued on November 16, 2001. The judgment was signed on December 3, 2001. The judgment of the WCJ stated the following:
(1) [R]andy Nuzum's tonsillectomy is found to be related to his workplace chemical exposure. Claimant is entitled to reimbursement of any related medical expenses, including surgery and prescription expenses in accordance with the workers' compensation fee schedule. Claimant is further entitled to a penalty in the amount of $2,000.00 due to the defendant's failure to timely pay these benefits. Claimant's attorney is hereby awarded $4000.00 in attorney's fees for the defendant's failure to timely pay these benefits.
(2) [T]he defendant failed to timely pay accident-related medical expenses from Our Lady of Lourdes and Dr. Perret on behalf of both Randy Nuzum and Craig Brigalia. Each claimant is hereby awarded a $2,000.00 penalty for defendant's failure to timely pay these benefits. Counsel for claimant's[sic] is hereby awarded $4,000.00 in additional attorney's fees, reflecting $2,000.00 on behalf of each claimant for these untimely payments.
(3) [T]he defendant did not have grounds to require a HCFA form prior to forwarding payment for numerous medical bills which resulted in the untimely payment of said bills. Each claimant is hereby awarded a $2,000.00 penalty for said untimely payments. Counsel for claimants is entitled to an additional attorney's fee in the amount of $2,000.00, reflecting $1,000.00 for each claimant due to these untimely payments.
(4) [A]ll healthcare providers who have treated Randy Nuzum and/or Craig Brigalia for their work-related injuries are only entitled to reimbursement for said treatment in the amount provided for under the fee schedule promulgated by the [OWC]. In the event that either claimant or their counsel has made payment to any such healthcare provider in an amount exceeding that called for in the fee schedule, it is ordered that the claimants and/or their counsel shall be reimbursed the amount of any such overpayment by the respective healthcare providers. Dr. Thomas Callender *523 is specifically excluded from this order given the contract entered between Dr. Callender and counsel for claimants.
(5) [D]efendant shall pay and/or reimburse any prescription expenses related to the claimants' workplace injuries and symptoms. Within sixty days from receipt of this signed Judgment, it shall be the defendant's duty to request an updated printout from claimants' pharmacies (specifically including Eckerds) and forward payment for said accident-related prescription expenses.
(6) [D]efendant shall pay judicial interest on all penalties, attorney's fees and medical benefits awarded herein from the date of Judgment until paid.
TCI appeals the WCJ's judgment and asserts the following assignments of error:
I. Manifest errors concerning HCFA 1500 form
A. The Office of Workers' Compensation manifestly erred in finding that the employer did not have grounds to require that healthcare providers (or claimants) submit a HCFA 1500 form prior to payment of medical charges by the employer.
B. The Office of Workers' Compensation manifestly erred in finding that payments by the employer for medical charges were untimely when the delay for payment of those charges was based solely upon a failure on the part of the claimants and/or their healthcare providers to provide a HCFA 1500 form to the employer.
C. The office of Workers' Compensation manifestly erred in ordering the employer to pay $6000 in penalties and attorneys' fees as a result of its finding that the employer could not require submission of a HCFA 1500 form prior to payment of medical charges.
II. Manifest errors concerning Randy Nuzum's tonsillectomy
A. The Office of Workers' Compensation manifestly erred in finding that Randy Nuzum's tonsillectomy was related to his workplace chemical exposure and was reasonably necessary.
B. The Office of Workers' Compensation manifestly erred in finding that the employer failed to timely pay benefits associated with Randy Nuzum's tonsillectomy.
C. The Office of Workers' Compensation manifestly erred in imposing penalties and attorneys' fees against the employer [for] its failure to pay for Randy Nuzum's tonsillectomy.
Claimants answer the appeal and assert that the WCJ erred in placing a limitation on the award for medical services provided by Dr. Callender, ordering reimbursement only for the amount allowable pursuant to the workers' compensation fee schedule, rather than payment for the full amount of actual out-of-pocket expenses incurred by the claimants as a result of Turner's arbitrary and capricious failure and/or refusal to pay for such treatment." Claimants also assert that they are entitled to an additional award of attorney's fees incurred in connection with defending this appeal.

LAW AND DISCUSSION
Louisiana jurisprudence is clear that in a workers' compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737; Washington v. Lyons Specialty Company, 96-0263, p. 6 (La.App. 1 Cir. 11/8/96), 683 So.2d 367, 372, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. A court of appeal may not set aside a hearing officer's finding of fact in absence of "manifest error" or unless it is "clearly wrong." Freeman v. Poulan/Weed Eater, *524 93-1530 at p. 5, 630 So.2d at 737; Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. On legal issues, the appellate court gives no special weight to the factfinder's conclusions, but exercises its constitutional duty to review questions of law and renders judgment on the record. Chaisson v. Oceanside Seafood, 97-2756, p. 3 (La.App. 1 Cir. 6/29/98), 713 So.2d 1286,1288.

HCFA 1500 Form
In TCI's first assignments of error, it asserts that the HCFA 1500 forms it required the physicians to send prior to paying the medical bills are required as a matter of law. TCI argues that the system set up by the Workers' Compensation Act and the Louisiana Administrative Code requires submission of a HCFA 1500 form by healthcare providers and payment of their charges in amounts set forth in a fee schedule. It reasons that, under La. R.S. 23:1201(E), La. R.S. 23:1034.2, and LAC 40:I.5111, physicians are required to provide a HCFA 1500 form in order to be compensated. TCI cites as support for its argument Kaiser v. Western-Southern Ins. Co., 01-1393 (La.App. 5 Cir. 5/15/02), 821 So.2d 52, where it was found that claimant was not entitled to reimbursement for unsupported or improperly submitted medical bills.
In its reasons for judgment, the WCJ stated that TCI untimely paid many bills because of the lack of HCFA forms. It recognized that the Workers' Compensation Act does not state that the adjuster can wait for a HCFA form before paying a bill. The Act requires that, once a bill for the work-related injury is submitted, an employer has sixty days to pay that bill. The WCJ noted that most of the bills that were not submitted on HCFA forms had just about everything on the bill except that it was not on the form. The WCJ recognized that only once did Cynthia Cambre the adjuster who handled TCI's workers' compensation claims, contact the doctor's office to get a form. The WCJ determined that Ms. Cambre could have faxed, written, or taken other action in order to get the form. The WCJ found that the Act does not provide for a waiting period beyond the 60 days for a HCFA form. It found that there was no question that the bills were related to the accident or exposure.
Louisiana Revised Statute 23:1201(E) states the following:
Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
Louisiana Revised Statute 23:1034.2(B) reads as follows:
B. The director shall adopt, in accordance with the Administrative Procedure Act, [footnote omitted] rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.
Louisiana Administrative Code 40:I.5111(A) states the following:
The HCFA 1500 form is to be used by health care providers except dentist, pharmacy, hospital (unless otherwise *525 stated), and for home and vehicle modifications for billing services provided to workers' compensation claimant. Do not use any other form. A sample HCFA 1500 claim form and detailed instruction for proper completion of the form follows.
We agree with the WCJ's determination that the Workers' Compensation Act does not provide for a specific procedure for how employers receive bills. The Act does refer to the Louisiana Administrative Code regarding the reimbursement schedule, but the Louisiana Administrative Code does not control in terms of procedure. Whereas in Kaiser, the fifth circuit referred to the form as a required form, other Louisiana jurisprudence[2] has allowed written notice, as required under La. R.S. 23:1201(E), to be any notice, such as receiving a medical bill from the worker himself or a written request from his counsel. As a result, we decline to find that under the Workers' Compensation Act, an employer's sixty day time period does not begin to run until it receives an HCFA form from the physician.
In the instant case, testimony was provided regarding the bills provided by Dr. Callender, a physician who treated both claimants. Ms. Cambre testified that, when she receives bills, she sends them to a company called AR2000 that reviews the bills and reduces them according to the workers' compensation fee schedule. She indicated that there were times when the pharmacy might have called regarding a prescription and she did not know the purpose of the prescription, so she would call the doctor's office to get that information. She stated that she had difficulty getting HCFA forms from Dr. Callender's office. At times she would call the doctor's office and request a copy of the HCFA forms. She identified a bill received on March 4, 2000 and indicated the bill was for services rendered from January 1999 to November 1999. The bill received on April 3 was for March 20 and March 21 services. She admitted she had not paid those bills and she could not offer an explanation for why they were not paid. She acknowledged a bill from Dr. Callender for services rendered on May 27, 2000 for Mr. Nuzum that had not been paid. She did not realize until the day before trial that the HCFA form was not in the file and that the bill had not been paid. The HCFA form was received October 30, 2000, and the bill was paid December 1, 2000. She had, at some point, written two letters to Dr. Callender's office requesting HCFA forms. There were several bills that she received that were not paid and she could offer no reason why they were not paid.
On cross examination, Ms. Cambre stated that it was TCI's practice to not pay a bill until she received a HCFA form. She stated that as she understood it, she had sixty days from receiving the appropriate bill in order to process a medical bill, with the exception of prescriptions. She did not do anything in order to get a HCFA form from Dr. Callender regarding the May 27 bill. She also did not recall paying for any prescription medication that Dr. Callender prescribed for both claimants. She had no explanation for why Blaxin or Arpavirene for Mr. Nuzum was not paid, and she admitted that she had not followed up when she could have called the pharmacist. She had no explanation as to why there was no payment on drugs prescribed for Mr. Brigalia by Dr. Peters. A letter was sent from claimants' counsel with a *526 September 11, 2000 bill attached and faxed. She admitted having knowledge of the bill on September 19, 2000. She identified a bill paid for Dr. Davis' treatment well after 60 days. She stated that the reason they require the HCFA form is because it has the diagnosis codes and procedure codes. She stated that she could have called Dr. Peters' and Dr. Davis' offices to obtain the appropriate codes but that would have been time consuming.
After a review of the record, we find that the WCJ committed no manifest error in finding that TCI untimely paid certain medical bills for both claimants and that TCI had not paid other bills that were related to the instant case. We find that the WCJ was not manifestly erroneous in determining that TCI had written notice of the bills, to be paid, and that they were arbitrary and capricious in deciding not to pay those medical bills. TCI cannot use the fact that they did not receive HCFA 1500 forms as a reasonable basis for not paying medical bills, when they received written notice through counsel for the claimants. An award of attorney fees is appropriate when the employer and/or insurer acted arbitrarily, capriciously, or without probable cause in discontinuing payment of workers' compensation benefits. La. R.S. 23:1201.2. Whether or not the refusal to pay benefits warrants the imposition of attorney fees is a factual matter that will not be disturbed on appeal in the absence of manifest error. Hughes v. Carroll Timber Co., 96-0031, p. 8 (La. App. 1 Cir. 10/1/96), 694 So.2d 331, 336. The assessment of penalties is determined by inquiring whether the employer or its insurer has "reasonably controverted" the compensation claims. La. R.S. 23:1201(F)(2); Henderson v. New Medico Associates, Inc., 95-0488, p. 9 (La.App. 1 Cir. 11/9/95), 667 So.2d 1094, 1099, writ denied, 96-0505 (La.4/8/96), 671 So.2d 338. We have thoroughly reviewed the record and cannot say that the WCJ was manifestly wrong in finding that the nonpayment of the unpaid medical expenses did not result from conditions beyond TCI's control or in concluding that the right to these medical benefits was not reasonably controverted, which warranted the imposition of penalties. We find that TCI's assignments of error regarding the HCFA 1500 forms cannot prevail.

Tonsillectomy
TCI also asserts that the WCJ erred in finding that Mr. Nuzum's tonsillectomy was necessary as a result of a work-related injury. As a result, it also argues that the WCJ erred in assessing a penalty and attorney's fees.
Ms. Cambre initially testified that she did not see any reports from Dr. Peters saying that the tonsillectomy was related to the incident. As a result, she did not approve the tonsillectomy procedure. She stated that the day before trial was the only time she had become aware that Mr. Nuzum had submitted to the tonsillectomy. She did not receive any bills concerning it. However, she admitted to regularly receiving reports and notes from Dr. Peters on this claim. She knew that the tonsillectomy had been recommended many months ago.
Dr. Peters first saw Mr. Nuzum on March 23, 1998. At that time Mr. Nuzum gave a history indicating that he had inhaled some caustic soda and hydrofluoric acid and was complaining of sinusitis, sore throat, and ear pressure. He also indicated that he had no nasal or sinus symptoms prior to the exposure. After an examination, Dr. Peters determined that Mr. Nuzum had a deviated nasal septum and some nasal congestion. He was noted to have some purulent puss looking material draining *527 out of his nose as well as having hypertrophy, or swelling of the membranes of the nose, consistent with sinusitis. His symptoms were consistent with exposure to a caustic and irritating substance. Mr. Nuzum was treated with multiple medications. Dr. Peters indicated that certain surgical procedures were recommended. Mr. Nuzum had similar symptoms to Mr. Brigalia. He also, however, suffered with sleep apnea and snoring associated with markedly enlarged tonsils. Dr. Peters stated that, because Mr. Nuzum was a big gentleman who had enlarged tonsils and a big neck, there was a tendency to make the tissues collapse inward when he relaxes and goes to sleep, thus resulting in problems with breathing. It may have no relationship to the exposure, but if a person has enlarged tonsils or any kind of blockage in the throat and his nose is blocked off as well, one tends to have greater problems with breathing and snoring. He did state that he thought Mr. Nuzum's tonsil problem is separate from his nasal blockage. If he took out the tonsils and worked on the palate and left the nose blocked up, chances were Mr. Nuzum's snoring and apnea would not be totally improved or improved at all. Mr. Nuzum testified that prior to the exposure he had no problem with snoring or sinuses.
The WCJ indicated in its oral reasons for judgment that it found that Mr. Nuzum's tonsillectomy was related to the exposure. The WCJ indicated that the relationship between the tonsillectomy and the exposure was so obvious that it was disheartened that Ms. Cambre did not pay for the procedure. According to the WCJ, it was accepted that Mr. Nuzum had no problems with either his tonsils or his sleeping before the exposure, and had very similar symptoms to Mr. Brigalia, who suffered the same exposure. The WCJ also noted that it was not reasonable for Ms. Cambre to find that the tonsillectomy was not related and to refuse to pay for the tonsillectomy strictly based on a note from Dr. Peters' office by some staff person that said it was not related. The WCJ referenced the deposition of Dr. Peters as supporting and contributing to its reasons for its finding. As a result, the WCJ determined that the tonsillectomy was related and that TCI should pay for all medical expenses related to the tonsillectomy according to the fee schedule. As a result of not finding any reasonable grounds for TCI's refusal to pay, attorney's fees and penalties were awarded.
TCI contends that the WCJ erred in awarding attorney's fees and penalties. TCI cites Howard v. Our Lady of the Lake Regional Medical Center, 99-1826 (La. App. 1 Cir. 9/22/00), 768 So.2d 293, as authority for its assertion that there can be no penalties awarded for a failure to authorize treatment. Although TCI is correct in its interpretation of the law as stated in Howard, the Louisiana Supreme Court, in Authement v. Shappert Engineering, XXXX-XXXX (La.2/25/03), 840 So.2d 1181, 2003 WL 536744, settled a conflict within the circuits regarding this issue. Whereas the First Circuit did hold that a failure to authorize medical treatment does not provide grounds for penalties and attorney's fees, the Supreme Court determined that all other circuits recognized that the failure to authorize a medical procedure for an employee eligible to receive workers' compensation is deemed to be the failure to furnish compensation benefits warranting penalties and attorney fees under LSA-R.S. 23:1201. The Louisiana Supreme Court, after a thorough analysis of the law in Authement, concluded that a failure to authorize treatment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. Depending on the circumstances, a failure to *528 authorize treatment is effectively a failure to furnish treatment. Authement, XXXX-XXXX at p. 5, 840 So.2d at 1185. Therefore, this appellate court yields to Authement on this issue.
Whether the imposition of penalties and attorney's fees is warranted is a factual question that will not be disturbed upon review in the absence of manifest error or unless clearly wrong. See Haws v. Professional Sewer Rehabilitation, Inc., 98-2846, p. 10 (La.App. 1 Cir. 2/18/00), 763 So.2d 683, 690-691. After a thorough review of the record, we affirm the WCJ's ruling relative to the tonsillectomy.

Claimants' Counsel's Reimbursement
Claimants assert that the WCJ erred in placing a limitation "on the award for medical services provided by Dr. Callender, ordering reimbursement only for the amount allowable pursuant to the workers' compensation fee schedule, rather than payment for the full amount of actual out-of-pocket expenses incurred by the claimants as a result of Turner's arbitrary and capricious failure and/or refusal to pay for such treatment." As a result, claimants contend that they are entitled to penalties and attorney's fees in connection with this appeal.
The WCJ determined that claimants' counsel entered into a contract with Dr. Callender regarding the payment of Dr. Callender's fees. Claimants' counsel paid Dr. Callender's office the full amount for certain medical bills, rather than the lesser amount that would have been due under the fee schedule. The WCJ chose not to award claimants' counsel a reimbursement amount by TCI over and above the fee schedule amount, regardless of the amount claimants' counsel paid. It did, however, order that the doctors pay back to claimants' counsel any amount over the fee schedule. We make no comment on the efficacy of that ruling. After a thorough review of the record, we can find no manifest error in the WCJ's findings.

CONCLUSION
For the above-stated reasons, the judgment of the WCJ in favor of the claimants, Randy Nuzum and Craig Brigalia, and against TCI Turner Corporation, is hereby affirmed. Costs are assessed against defendant.
AFFIRMED.

On Application for Rehearing
KLINE, J.
Pursuant to plaintiffs'/appellees' application, a rehearing is granted for the limited purpose of addressing plaintiffs'/appellees' answer to the appeal requesting an additional award of attorneys fees for defending the appeal.
The plaintiffs'/appellees' are awarded the sum of $1,500.00 additional attorney fees for the consolidated appeal.
In all other respects the original judgment is maintained.
/s/ Frank Foil
JUDGE FRANK FOIL
/s/ Page McClendon
JUDGE PAGE MCCLENDON
/s/ William F. Kline, Jr.
JUDGE PRO TEMP. WILLIAM F.
KLINE, JR.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] See Spencer v. Gaylord Container Corporation, 96-1230, p. 15 (La.App. 1 Cir. 3/27/97), 693 So.2d 818, 829.