# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1702

MARY SEMERE

VERSUS

**OUR LADY OF LOURDES HOSPITAL**

********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 01-08460
SHARON M. MORROW, WORKERS COMPENSATION JUDGE

********

## MARC T. AMY
## JUDGE

********

Court composed of Sylvia R. Cooks, Billie Colombaro Woodard, and Marc T. Amy, Judges.

**AFFIRMED.**

**Philip E. Roberts**
**Roy, Bivins, Judice, Roberts & Wartelle**
**Post Office Drawer Z**
**Lafayette, LA  70502**
**(337) 233-7430**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Our Lady of Lourdes Hospital**

**Robert Morlas Schoenfeld**
**Schoenfeld, Schoenfeld & Schoenfeld Law Corp.**
**810 Union Street, Suite 324**
**New Orleans, LA  70112**
**(504) 586-0025**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
   **Mary Semere**

AMY, Judge.

In this workers' compensation matter, the employee-claimant filed a disputed claim, seeking attorney's fees and penalties on the grounds that her employer failed to authorize a referral visit to an orthopedist, failed to timely provide copies of accident and medical reports, and failed to timely authorize a wellness program recommended by her physician. The claimant dismissed the portion of the suit pertaining to the accident and medical reports, and, at the hearing in the matter, the employer was granted an involuntary dismissal as to the referral. The workers' compensation judge found that the employer failed to timely authorize the claimant's participation in the physician-recommended wellness program and awarded her penalties and attorney's fees accordingly. The employer appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The record of the proceedings below indicates that on January 4, 1999, Mary Semere, a nurse's aide employed by Our Lady of Lourdes Hospital in Lafayette and the claimant herein, injured her lower back in the course and scope of her employment while lifting a patient. Ms. Semere testified that at the time of the accident, she and a co-worker were trying to put a patient back in bed. Ms. Semere indicated that she was on the "pulling side" of the patient; during the "pulling," her back popped. The record reflects that for treatment for her injuries, Ms. Semere first consulted Dr. Joseph Schutte, who referred her to Dr. Leoni. Dr. Leoni, in turn, referred her to Dr. DeAlvare; after consultation, Dr. DeAlvare referred her to Dr. Joseph T. Gillespie, an anesthesiologist specializing in pain management. Ms. Semere underwent the first of two surgeries, a discectomy conducted by Dr. Leoni, on May 9, 1999. In August 2002, Drs. Schutte and Leoni performed a second discectomy and a laminectomy and

fusion. Ms. Semere testified that Drs. Gillespie and Leoni informed her that she could not return to her prior duties, and Dr. Gillespie recommended that she receive schooling and vocational rehabilitation that would enable and prepare her to take up another trade.

According to Ms. Semere's testimony, as of October 2001, she still had not received approval for the wellness program, the vocational rehabilitation, and the schooling. On October 25, 2001, she retained an attorney. Ms. Semere filed the instant disputed claim for penalties and attorney's fees on November 16, 2001, in which she asserted that Our Lady of Lourdes would not authorize an appointment with Dr. Blanda, pursuant to Dr. Gillespie's referral; it did not timely provide medical and accident records; and it did not timely authorize the wellness program recommended by Dr. Gillespie.

At the hearing in the matter, conducted on September 9, 2003, Ms. Semere asserted that Dr. Gillespie first recommended a wellness program for her on October 26, 2000. She explained that this wellness program was to include treadmill exercise, light weight training, swimming and water aerobics, and hot tub/jacuzzi therapy. Ms. Semere stated that at the time the program was recommended, she was ready to begin therapy; however, months passed without its approval. She testified that during her treatment with Dr. Gillespie, she expressed her frustration that the program had not yet been approved. Ms. Semere indicated that she called Mr. George Jones, Our Lady of Lourdes' workers' compensation manager, to inquire as to when the program would be approved, explaining that she believed that she was required to get approval from Mr. Jones before she could begin. She recalled that Mr. Jones advised her to call Ms. Donna Hill, an insurance adjuster with Our Lady of Lourdes' third-party administrator, Frank Gates Service Company (hereinafter "Frank Gates"), noting that

2

direct communication with Ms. Hill might expedite the approval process. Ms. Semere testified that she called Ms. Hill, whom she described as "ugly" and "rude" to her on the phone. She stated that during their conversation, she asked Ms. Hill about the wellness program but received no response. During her testimony, Ms. Semere maintained that she never told Mr. Jones or Ms. Hill that she did not wish to participate in the wellness program. The record indicates that the wellness program was approved on December 14, 2001, and as of the date of hearing, Ms. Semere continued to participate.

Ms. Donna Hill explained under cross-examination that Our Lady of Lourdes supplies "ProComp" forms to attending physicians in workers' compensation cases, and the physicians indicate recommended courses of therapy on these forms.[1] Ms. Hill testified that Dr. Gillespie's October 26, 2000 ProComp form did not mention aqua therapy or a wellness program. Ms. Hill recalled that she first learned of the wellness program recommendation on May 7, 2001, when Mr. Jones faxed her Dr. Gillespie's prescription for the program; after she received this prescription, another insurance adjuster with Frank Gates sent Dr. Gillespie a letter asking him to elaborate upon the types of wellness treatments recommended, but Dr. Gillespie did not respond. Ms. Hill testified that another letter was sent on June 28, 2001. Ms. Hill indicated that after they received Dr. Gillespie's response, dated July 3, 2001, Mr. Jones began to research therapy costs and brochures.

Ms. Hill explained at the hearing that Ms. Semere could have initiated the wellness program herself by bringing her prescription to a wellness center. Ms. Hill indicated that the wellness center would have called Frank Gates for approval, and

---

[1]The record reflects that neither Ms. Hill nor Mr. Jones brought their respective claims files with them to the hearing.

3

Frank Gates would have consented. She further noted that the particular wellness program that was eventually chosen for Ms. Semere required six months' advance payment.

Ms. Hill recalled speaking to Ms. Semere over the phone on July 24, 2001, regarding the referral to Dr. Blanda.[2] Ms. Hill testified that she told Ms. Semere that she wanted her to go to the wellness program office; however, she stated, Ms. Semere, who sounded "agitated," insisted that she wanted to see Dr. Blanda. According to Ms. Hill's testimony, Ms. Semere said that she was not interested in the wellness program, aqua therapy, or a dietician. However, Ms. Hill admitted that Frank Gates had received nothing from Dr. Gillespie indicating that Ms. Semere did not wish to participate. She recalled that the next recommendation for the wellness program came from Dr. Gillespie on October 25, 2001, and at this time, she and Mr. Jones decided to set up the program for Ms. Semere.

Our Lady of Lourdes moved for involuntary dismissal at the close of Ms. Semere's case. The workers' compensation judge granted the motion as to the referral to Dr. Blanda, noting that the claim was reasonably controverted. However, the workers' compensation judge denied the motion as to the wellness program, finding that La.R.S. 23:1201(E)[3] does not involve "demand;" instead, she observed, it involves "notice."

In its effort to defeat the remaining claim, Our Lady of Lourdes called Mr. George Jones, manager of the hospital's workers' compensation program, to testify. On examination, Mr. Jones stated that he did not receive a prescription from Dr.

---

[2]During her testimony, Ms. Semere explained that after her second surgery, Dr. Gillespie suggested that she see Dr. Louis Blanda due to Dr. Blanda's expertise in back surgery.

[3]The text of this article will be reproduced in the discussion section that follows.

Gillespie for the wellness program after Ms. Semere's appointment on October 26, 2000; instead, he recalled that the first prescription followed the May 7, 2001 appointment. He noted that he then forwarded the prescription to Frank Gates on May 31, 2001. Mr. Jones recalled that an adjuster from Frank Gates called him on July 2, 2001, to tell him that the wellness program had been approved; according to his testimony, he then began to research various programs, sending some of the brochures that he had collected to Ms. Hill.

Mr. Jones confirmed that Ms. Semere telephoned him on July 24, 2001; however, he testified that she did not call him in order to make arrangements to begin the wellness program. Mr. Jones recalled that Ms. Semere said that she had seen Dr. Gillespie the day before, and she said that he expressed a desire for her to consult with Dr. Blanda. According to Mr. Jones, Ms. Semere did not mention the wellness program during this conversation or during a conversation the following day. He said that when he later heard from Ms. Hill that Ms. Semere did not want to participate in the wellness program, he stopped making plans for her to attend. However, Mr. Jones conceded that Ms. Semere never told him that she did not want to go to the wellness program.

Mr. Jones testified that after receiving a letter dated October 29, 2001, from Dr. Gillespie, he resumed making arrangements for Ms. Semere to attend the wellness program. He stated that he called Ms. Semere on December 11, 2001 to tell her that he needed her signature on some paperwork before she could begin, but Ms. Semere explained that her car had broken down, and she would try to come sign the paperwork the following day. Mr. Jones noted that Ms. Semere left him a message on December 17, saying that she had visited the wellness center office on the afternoon of December 14 and that she was to perform her screening later that day.

5

Mr. Jones opined that nothing kept Ms. Semere from going to the wellness program; he explained that it was like any other health club in that you merely go to the front desk and express your interest in joining. However, he stated that he did not know if Ms. Semere was aware that she could sign up for the wellness program in that manner.

At the conclusion of the hearing, the workers' compensation judge ruled that Our Lady of Lourdes failed to timely approve the wellness program, finding that it was first recommended in October 2000 and was approved in December 2001, some fourteen months later. In her ruling, the workers' compensation judge pointed out that La.R.S. 23:1201(E) speaks in terms of sixty days; as such, even if the prescription was first issued in May 2001, the program still was not approved within the statutory time limit. The workers' compensation judge noted the conflict in the respective testimonies of Ms. Semere, who insisted that she never said that she did not want to participate, and of Ms. Hill, who claimed the opposite. However, the workers' compensation judge noted, Ms. Hill's testimony was not sufficient to controvert the necessity of the wellness program. At the conclusion of her ruling, the workers' compensation judge remarked that Ms. Hill should have documented Ms. Semere's statement that she did not want the program; in the alternative, Ms. Hill should have set up the program in a timely manner and waited to see whether Ms. Semere participated. The workers' compensation judge opined that either action would have constituted reasonable controvertion, but neither was taken. Accordingly, the workers' compensation judge imposed a penalty of $2,000 and attorney's fees of $3,500.

The record indicates that at this time, Our Lady of Lourdes asked the workers' compensation judge to reopen the evidence, claiming that a notation in Ms. Hill's

6

claims file confirmed that during the July 24, 2001 conversation, Ms. Semere said that she did not want to participate in the wellness program. The workers' compensation judge denied this request, sustaining opposing counsel's objection. The record reflects that as a proffer, Our Lady of Lourdes then called Ms. Hill to the witness stand to discuss this particular notation.

Our Lady of Lourdes appeals the ruling of the workers' compensation judge, asserting the following assignments of error:

1. The workers' compensation judge erred as a matter of law in determining that an employer may be liable for penalties and attorney's fees pursuant to La.R.S. 23:1201(E) and (F) for failing to authorize medical benefits when neither the employee nor the employee's health care provider made demand.

2. The workers' compensation judge erred in determining, as a matter of fact, that the employer herein had not authorized medical benefits in accordance with La.R.S. 23:1201(E).

3. The workers' compensation judge erred in awarding excessive attorney's fees in that the employer never denied the medical benefits at issue, and the employee was notified of the benefit's authorization prior to its being served with the disputed claim in this matter.

4. The workers' compensation judge abused its discretion in refusing to reopen the evidence to introduce documentation from the third-party administrator's file that confirmed a conversation mentioned during oral testimony after the workers' compensation judge ruled that such documentation was important to a decision in this matter.

**Discussion**

In the context of workers' compensation benefits, La.R.S. 23:1201(E) provides that "[m]edical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof." Penalties for noncompliance with La.R.S. 23:1201(E) are outlined in La.R.S. 23:1201(F), the pertinent sections of which are as follows:

> Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent

7

of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

*Imposition of Penalties and Attorney's Fees in the Absence of Demand and Determination that the Employer Had Not Authorized Medical Benefits*

Because Our Lady of Lourdes' first two assignments of error are interrelated, we address them together. Our Lady of Lourdes first contends that in order for a claimant to be entitled to attorney's fees and penalties as a result of an employer's or insurer's failure to pay medical benefits pursuant to La.R.S. 23:1201(E), the claimant must make demand. It asserts that in this matter, the workers' compensation judge determined that the claimant was entitled to penalties and attorney's fees without demand; as such, this ruling is at odds with the jurisprudence and constitutes an error of law. Accordingly, we review the workers' compensation judge's ruling to ascertain whether it was legally correct. *Belaire v. Don Shetler Olds Buick Chevrolet*, 02-1152 (La.App. 3 Cir. 6/4/03), 847 So.2d 723.

In support of its position that the workers' compensation judge erred as a matter of law and that demand is required before attorney's fees and penalties may be awarded pursuant to La.R.S. 23:1201(E) and (F), Our Lady of Lourdes cites *Anderson v. Biedenharn Bottling Group*, 95-646, p. 11 (La.App. 3 Cir. 11/2/95), 664 So.2d 588, 594 ("a requisite for recovery under [La.R.S. 23:1201(E) and La.R.S. 23:1121(C)] is

8

a demand made upon the employer"); *Garner v. Sheats & Frazier*, 95-39, p. 8 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 62 ("at no time did Garner make demand upon Sheats & Frazier or its insurer to authorize payment of the additional testing suggested by Dr. Foret"); and *Spencer v. Gaylord Container Corp.*, 96-1230, pp. 15-16 (La.App. 1 Cir. 3/27/97), 693 So.2d 818, 829 (the first circuit undertakes an inquiry as to whether the employee's actions constituted demand, citing the holdings of *Garner* and *Anderson*, above). In addition, Our Lady of Lourdes claims that a *formal* demand is required, reproducing a portion of the recent supreme court decision in *Authement v. Shappert Engineering*, 02-1631, p. 2 (La. 2/25/03), 840 So.2d 1181, 1183, which states that "[a]s early as January 25, 2000, plaintiff's counsel communicated with St. Paul asserting a formal demand to make appropriate financial arrangements for Mr. Authement to be examined by Dr. Dehne as soon as possible." Our Lady of Lourdes contends that in the instant matter, neither Ms. Semere nor Dr. Gillespie made demand upon it or upon its third-party administrator to approve the wellness program at issue. Our Lady of Lourdes argues, in essence, that it should not have been required to approve treatment before Ms. Semere sought to obtain it.

We observe that during the hearing in this matter, Our Lady of Lourdes emphasized that on October 26, 2000, Dr. Gillespie did not make his recommendation on the ProComp form supplied by the third-party administrator; instead, his recommendation that Ms. Semere begin wellness program was written on an accompanying form under the heading, "Plan," which the record indicates was faxed along with the ProComp form on October 27, 2000. It appears from the record that Our Lady of Lourdes' contention was that because Dr. Gillespie's recommendation was not on the ProComp form, even though it appeared on the accompanying form, it did not constitute "demand."

9

A plain reading of La.R.S. 1201(E) indicates that there is no requirement that notice take a particular form; moreover, our review of the relevant case law reveals no jurisprudential rule mandating any specific form. In this respect, we find persuasive the first circuit's opinion in *Nuzum v. TCI Turner Corp.*, 02-1232, (La.App. 1 Cir. 3/28/03), 857 So.2d 520. In *Nuzum*, the employer appealed the decision of the workers' compensation judge in favor of the employee, claiming that the employee's health care provider was required to submit a particular form in order that a medical expense might be paid. In its analysis on appeal, the first circuit provided the following commentary as to the requirements of La.R.S. 23:1201(E):

> In TCI's first assignments of error, it asserts that the HCFA 1500 forms it required the physicians to send prior to paying the medical bills are required as a matter of law. TCI argues that the system set up by the Workers' Compensation Act and the Louisiana Administrative Code requires submission of a HCFA 1500 form by healthcare providers and payment of their charges in amounts set forth in a fee schedule. It reasons that, under La. R.S. 23:1201(E), La. R.S. 23:1034.2, and LAC 40:I.5111, physicians are required to provide a HCFA form in order to be compensated. TCI cites as support for its argument *Kaiser v. Western-Southern Ins. Co.*, 01-1393 (La.App. 5 Cir. 5/15/02), 821 So.2d 52, where it was found that claimant was not entitled to reimbursement for unsupported or improperly submitted medical bills.
>
> In its reasons for judgment, the WCJ stated that TCI untimely paid many bills because of the lack of HCFA forms. It recognized that the Workers' Compensation Act does not state that the adjuster can wait for a HCFA form before paying a bill. The Act requires that, once a bill for the work-related injury is submitted, an employer has sixty days to pay that bill. The WCJ noted that most of the bills that were not submitted on HCFA forms had just about everything on the bill except that it was not on the form.
>
> . . . .
>
> Louisiana Revised Statute 23:1034.2(B) reads as follows:
>
> B. The director shall adopt, in accordance with the Administrative Procedure Act, [footnote omitted] rules and regulations necessary to establish and implement a reimbursement schedule for such care, services, treatment, drugs, and supplies.
>
> Louisiana Administrative Code 40:I5111(A) states the following:
>
> The HCFA 1500 form is to be used by health care providers except dentist, pharmacy, hospital (unless otherwise stated), and for home and vehicle modifications for billing services provided to workers' compensation claimant. Do not use any other form. A sample HCFA 1500 claim form and detailed instruction for proper completion of the form follows.

10

We agree with the WCJ's determination that the Workers' Compensation Act does not provide for a specific procedure for how employers receive bills. The Act does refer to the Louisiana Administrative Code regarding the reimbursement schedule, but the Louisiana Administrative Code does not control in terms of procedure. Whereas in *Kaiser*, the fifth circuit referred to the form as a required form, *other Louisiana jurisprudence has allowed written notice, as required under La. R.S. 23:1201(E), to be any notice*, such as receiving a medical bill from the worker himself or a written request from his counsel. As a result, we decline to find that under the Workers' Compensation Act, an employer's sixty day time period does not begin to run until it receives an HCFA form from the physician.

*Nuzum*, 857 So.2d at 525 (emphasis added).

Furthermore, the supreme court's opinion in *Authement*, cited by Our Lady of Lourdes, does not support the hospital's argument that La.R.S. 23:1201(E) requires formal demand. In this respect, it is helpful to note the context of the portion reproduced above. In *Authement*, the court noted that the after the employee had filed a disputed claim asserting that the insurer had failed to authorize certain medical treatment, the employee's orthopedist had recommended evaluation by another specialist. In order to proceed with the evaluation, the employee needed authorization from the insurer, which was not forthcoming. As a result, the employee's attorney issued a formal demand in an attempt to obtain authorization from the employer. In *Authement*, the supreme court did not pinpoint the date of the formal demand as the beginning of the sixty-day period of La.R.S. 23:1201(E); instead, the court referred to the physician's initial recommendation that pre-dated the formal demand as triggering the sixty-day period. *Authement*, 840 So.2d at 1186.

Based upon our review of the statutory language and the relevant jurisprudence, we find that valid notice pursuant to La.R.S. 23:1201(E) does not have to be on a particular form issued by the employer or its insurer; instead, it is only required to be written. In this case, the recommendation was in written form, it was received by Our Lady of Lourdes, and it was therefore sufficient. We find that Dr. Gillespie's

recommendation under "Plan" on the sheet accompanying the ProComp form was sufficient "notice" pursuant to La.R.S. 23:1201(E) to trigger the sixty-day period for imposition of penalties and attorney's fees. We find that the workers' compensation judge's ruling in this respect, that Dr. Gillespie's recommendation of October 26, 2000, constituted notice, was legally correct.

We now turn to Our Lady of Lourdes' second argument on appeal. It insists that it did not deny Ms. Semere's wellness program; instead, it argues, the only factual issue before the workers' compensation judge was whether Our Lady of Lourdes failed to authorize the program. Our Lady of Lourdes maintains that it did not fail to authorize the program because it was never presented the opportunity to make the program available.

The workers' compensation judge's determination that Ms. Semere had given notice to Our Lady of Lourdes was a question of fact. In *Edwards v. Sawyer Indus. Plastics, Inc.*, 99-2676, p. 9 (La. 6/30/00), 765 So.2d 328, 333, the Louisiana Supreme Court, quoting its opinion in *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973), discussed the province of an appellate court in reviewing the factual determinations of a workers' compensation judge, as follows:

> When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

Central to an inquiry as to whether an employer is subject to penalties and attorney's fees as a result of its failure to reasonably controvert its employee's claims are the facts of which the employer was cognizant at the time of its conduct. *Romero v. Northrop-Grumman*, 01-24 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144.

The record clearly reflects that both Our Lady of Lourdes and its third-party administrator received Dr. Gillespie's written notice, dated October 26, 2000, that he wanted Ms. Semere to participate in a wellness program. The record also includes Ms. Hill's statements that she received the recommendation within thirty-five to forty days of October 26, 2000. This notice provided the "opportunity" to Our Lady of Lourdes to make the program available, within the time limits established by La.R.S. 23:1201(E). Our Lady of Lourdes' argument in this respect is further refuted by Ms. Semere's testimony that she customarily waited for a call informing her that she had been approved before she commenced treatment under the workers' compensation scheme at Our Lady of Lourdes, and she further testified that she called Ms. Hill and Mr. Jones and asked about the program on July 24, 2001.

The workers' compensation judge determined, based upon the testimony adduced at the hearing and the evidence offered, that Dr. Gillespie first recommended the wellness program on October 26, 2000, and that Our Lady of Lourdes failed to authorize this program within sixty days. Based upon our examination of the record, we do not find that the workers' compensation judge committed manifest error as to these factual determinations. These assignments are without merit.

*Excessive Attorney's Fees*

A workers' compensation judge is given great discretion in determining whether to award attorney's fees; accordingly, a ruling in this regard will be reversed on appeal only if clearly wrong. *Duhon v. Albertson's, Inc.*, 02-494 (La.App. 3 Cir.

13

10/30/02), 829 So.2d 1190. Moreover, in *Romero*, 787 So.2d at 1157, a panel of this court explained that:

> While the legislature has set statutory limits on the amount of penalties which may be awarded, the legislature has made no such limitation on the amount of attorney fees which may be awarded. *See* La.R.S. 23:1201. The legislature's only mandate is that such attorney fees be reasonable. In setting reasonable attorney fees, the supreme court has advised us to consider "the degree of skill and ability exercised, the amount of the claim, and the amount recovered for the plaintiff, and the amount of time devoted to the case." *Naquin v. Uniroyal, Inc.*, 405 So.2d 525, 528 (La.1981).

We note that Ms. Semere's attorney prepared pre-hearing statements and prepared for and participated in both the pre-hearing mediation conference and the hearing in this matter. We find that the sum of $3,500.00 is not unreasonable in light of the volume of work done below; accordingly, we find that the award of attorney's fees was not clearly wrong in this respect. This assignment lacks merit.

*Refusal to Reopen the Evidence*

A trial judge is vested with discretion as to whether to reopen a case for the admission of further evidence. *Fowler v. Fowler*, 98-953 (La.App. 3 Cir. 12/9/98), 772 So.2d 125 (quoting *Tatum v. Old Republic Ins. Co.*, 94-157, p. 4 (La.App. 3 Cir. 10/5/94), 643 So.2d 419, 422, *writ denied*, 94-2722 (La. 1/6/95), 648 So.2d 929). Accordingly, such decision shall not be disturbed in the absence of manifest error. *Id.*

The record reflects that at the hearing, when the employer moved to reopen the evidence, both parties had already rested, and the workers' compensation judge had already issued a decision. Our Lady of Lourdes points out that in her ruling, the workers' compensation judge remarked that the employer would have reasonably controverted Ms. Semere's claims if, during the July 24, 2001 phone conversation, Ms. Hill had documented Ms. Semere's statement that she did not want to participate in the wellness program. Our Lady of Lourdes argues that it would have presented

14

evidence of such documentation during its examination of Ms. Hill had it known that the workers' compensation judge considered it important.

The record reflects that, throughout the hearing, both sides gave considerable attention to the question of whether Ms. Semere had told Ms. Hill and/or Mr. Jones that she did not wish to participate in the wellness program. The record indicates that after Ms. Semere's attorney concluded his examination of Ms. Hill, Our Lady of Lourdes' attorney had the opportunity to ask her about the conversation and about any documentation that might have supported her version of events; instead, he deferred, reserving the right to question her. After the judge denied the motion for involuntary dismissal as to the authorization of the wellness program, Our Lady of Lourdes' attorney questioned Mr. Jones on direct examination and then rested without exercising his right to question Ms. Hill. Accordingly, we find that the workers' compensation judge did not commit manifest error in refusing to reopen the case so that Our Lady of Lourdes might introduce evidence pertaining to Ms. Hill's conversation with Ms. Semere on July 24, 2001. This assignment is without merit.

Ms. Semere has requested additional attorney's fees for work performed on appeal. However, for a party to receive such an award, that party must have filed an answer to the appeal. The record indicates that Ms. Semere did not answer the instant appeal but merely filed a reply brief; accordingly, her request for additional fees is denied. *Dugas v. Aaron Rents, Inc.*, 02-1276 (La.App. 3 Cir. 3/5/03), 839 So.2d 1205.

**DECREE**

For the foregoing reasons, the ruling of the workers' compensation judge is affirmed. All costs of this proceeding are assigned to the employer, Our Lady of Lourdes Regional Medical Center, Inc.

**AFFIRMED.**

15