# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1705

**PROACTIVE THERAPY**

**VERSUS**

**YELLOW BOOK, USA**

**CONSOLIDATED WITH**

**JO LYNN DURAN**

**VERSUS**

**YELLOW BOOK, USA**

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT # 3
PARISH OF CALCASIEU, NO. 02-5631 C/W 02-6514
HONORABLE CHARLOTTE A. BUSHNELL
WORKERS COMPENSATION JUDGE

**********
**JOHN B. SCOFIELD**
**JUDGE**
**********

Court composed of Jimmie C. Peters, Michael G. Sullivan and John B. Scofield[*], Judges.

**AFFIRMED AS AMENDED.**

**Marcus Miller Zimmerman**
**Attorney at Law**
**910 Ford St.**
**Lake Charles, LA 70601**
**Counsel for Plaintiff/Appellee:**
    **Jo Lynn Duran**
    **Jeffrey C. Napolitano**

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Randy J. Hoth**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3838 N. Causeway Blvd., #2500**
**Metairie, LA 70002**
**Counsel for Defendants/Appellants:**
      **Yellow Book, USA and**
      **Chubb Group of Insurance Companies**

**David B. Green**
**Woodley, Williams**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**Counsel for Plaintiff/Appellee:**
      **Proactive Therapy**

SCOFIELD, Judge[1].

Defendants, Yellow Book, USA and Chubb Group of Insurance Companies (collectively referred to a Yellow Book), appeal a judgment of an Office of Workers' Compensation Judge (OWCJ) in favor of Claimant, Jo Lynne Duran, finding she suffered a compensable accident for which benefits are due, and in favor of Plaintiff, Proactive Physical Therapy (Proactive), finding Proactive is entitled to payment for treatment it rendered Ms. Duran following her accident. The OWCJ also awarded Ms. Duran penalties and both Claimant and Plaintiff, attorneys' fees. Defendants were cast with interest and costs. Defendants appeal. Ms. Duran answered the appeal seeking additional attorney's fees for work necessitated by this appeal. Although Proactive prays for additional attorney's fees in brief, it neither appealed nor answered Defendants' appeal; thus its request is not properly before the court. We amend the judgment of the OWCJ to award Ms. Duran $2,500.00 in additional attorney's fees and affirm the judgment as amended.

**FACTS**

Claimant, Jo Lynne Duran, was employed by Yellow Book as an account executive whose responsibility was to sell advertisement to local businesses in the Lake Charles area. On April 17, 2002, she went to work at about 8:30 a.m. Sometime after 10:00 a.m. she departed to keep an appointment with her primary care physician, Dr. Craig Broussard, and to call upon a client whose Yellow Book ad needed clarification. While waiting at the doctors' office Claimant continued to receive business phone calls on her cellular phone. Upon checking out at the doctors' office she inquired of Dr. Broussard and another doctor in the office, Dr. Ron Lewis, whether they had ads in the Yellow Book. Claimant then left the doctors' office,

---

[1] Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

1

planning to meet a co-worker, Pam Tadlock, at the Yellow Book office. Claimant and Ms. Tadlock had planned to go pick up lunch and bring it back to the Yellow Book office for a working lunch. On the way back to the office, Claimant placed and received additional business calls on her cellular telephone. As she attempted to turn into the Yellow Book parking lot she was "broad-sided" by another motorist and sustained serious injuries.

The OWCJ found that although Claimant had deviated from her employer's business when she stopped to see her personal physician, she had re-entered the course and scope of her employment, if not when she asked the two doctors about Yellow Book ads, certainly when she stared back toward the office, conducting telephone business en route. Defendants appeal that determination and the award of penalties and attorneys' fees.

**LAW AND DISCUSSION**

On appeal, Defendants list five assignments of alleged error; however, those assignments raise but two issues: 1) Was Claimant in the course and scope of her employment at the time of the accident? and 2) Did the OWCJ err in awarding penalties and/or attorneys' fees?

Defendants argue that Claimant had deviated from the course and scope of her employment to see her private physician and, at the time of the accident, she had not yet returned to her employment as she was on her way to the office for lunch. The OWCJ found that Claimant had returned to her employer's business at the time of the accident.

Here, the nature of Claimant's work is a key element in analyzing whether the accident in which she was involved occurred during the course and scope of her employment. Claimant was a salesperson. She sold advertising space in the Yellow Book. The evidence is undisputed that to perform her work, she regularly used her

2

automobile and her cell phone. Her job was to communicate with people, meet with them, and sell them advertising space. She used the telephone to make sales pitches, to set up appointments with customers, to follow up on appointments, to receive inquiries from customers and potential customers, and to trouble shoot customers' problems. For the most part, the personal appointments with customers required her to travel by automobile to the customer's place of business or home. Claimant's work place, therefore, was by no means confined to the premises of her employer. The spatial boundaries of her work were limited only by the range of her automobile or her cell phone. It is fair to say that her work place easily encompassed the entire City of Lake Charles.

The temporal aspects of her work are also significant to our analysis. While Claimant's stated work hours were from 8:30 a.m. to 4:30 p.m., she testified that she definitely was required at times to contact customers before normal work hours, after work hours and during the noon hour. During her testimony she stated:

> Well, like I said, it wouldn't matter where we would be or if we were at per se lunch. Sometimes we didn't get a lunch. If we got a phone call and a customer could see us, we – didn't matter to us what time it was or where we were. We went.

The broad temporal and spatial expanses of Claimant's work place were something required of her by her employers.

On the day of her accident, Claimant did go to her doctor's office which, in and of itself, was a personal mission, a deviation from her employment. However, on the way to the doctor's appointment she went to a customer's place of business to address a mistake that had been made in preparing a proof of a proposed advertisement. After her session with her doctor was completed, she made a sales pitch to her doctor and another doctor in that office. On her way back to the Yellow Book offices, shortly before the accident, Claimant was making sales related calls on her cell phone. The

accident occurred while she was turning into her employer's office to pick up a co-worker and together they were going to buy some sandwiches and return to the office for a working lunch, i.e., while eating they were going to be making sales calls on their cell phones.

Some cases in our jurisprudence use the phrases "deviation from the work place" and "re-entry into the work place" in determining if a workers' compensation claimant is in the course and scope of employment when injured.

Deviation occurs when an employee, after having entered the work place, leaves or turns aside to do something personal or not work related. An injury occurring during the time of this deviation is generally not considered work related and, therefore, is not compensable under the workers' compensation laws. In *Timmons v. Silman*, 99-3264 (La. 5/16/00), 761 So.2d 507, the court ruled that an employee, Ms. Silman, who had gone to the post office to refill a postage meter for her employer was not within the course and scope of her employment when she was involved in an automobile accident. At the time of the accident, Ms. Silman was on her way to a bank, some 18 blocks in the opposite direction past her employers' business to cash her Christmas bonus check. *See also Hoy v. Gilbert*, 98-1565 (La.3/2/99), 754 So.2d 207.

Our courts also recognize that once one has deviated from his or her employment, it is possible to re-enter the work place. If an employee is injured after returning to the work place or re-entering the work place, our courts will generally consider the injury to be work related and the employee is entitled to the benefits of the workers' compensation laws. For instance, in *Belt v. State Through Louisiana Board of Cosmetology*, 493 So.2d 278, 285 (La.App. 3rd Cir.), *writ denied*, 496 So.2d 1044 (La.1986) this court stated:

> It is well established in our law that where there is a temporary

4

deviation from the course of employment to engage in purely personal business, such an employee re-enters his employment and the scope thereof when he has completed his private mission and turned toward the direction of the employment destination for the purpose of discharging his employment duties. *Simmons v. Liberty Mutual Insurance Company*, 185 So.2d 822 (La.App. 3rd Cir.1966); *Campbell v. Baker, Culpepper & Brunson*, 382 So.2d 1046 (La.App. 2nd Cir.1980) *writ refused*, 385 So.2d 793 (La.1980).

In the case at hand, Claimant did deviate during the twenty minutes or so that she was conferring with Doctor Broussard. However, given the nature of Claimant's work and the entire scope of her actions on the morning of her accident, we consider this deviation to be slight and of a very short duration. She was in the course of her employment just prior to the appointment with her doctor and was so just afterward. In fact, the nature of her work was such that she could very well have received a cell phone call from a customer during her session with Dr. Broussard and she could have been within the course and scope of her employment during her actual conference with the doctor.

In *Ray v. City of New Orleans*, 03-1484, pp. 1-2 (La.App. 4 Cir. 2/4/04), 867 So.2d 783, 785, our colleagues of the fourth circuit reminded us of the following:

> The issue of whether . . . [Claimant's] injury occurred within the course and scope of his employment is a factual determination. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. *Hulbert v. Boh Bros.*, 99-1187, p. 4 (La.App. 4 Cir. 1/5/00), 751 So.2d 994, 997. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. *Id.* Thus, even though an appellate court may feel that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.*

In the case before us, the record establishes that Claimant's job required her to spend considerable time both on the telephone and outside of the office contacting clients and prospective clients. She had engaged in both activities on the day of her

5

accident. While she had deviated from her duties to keep a medical appointment, we cannot say the OWCJ was clearly wrong in finding that Claimant had re-entered the course and scope of her employment before her accident. Upon leaving her doctor's office she headed back to the Yellow Book office and made and received business telephone calls on her cellular telephone along the way.

Appellants also argue that the OWCJ erred in awarding penalties to Claimant and attorneys' fees to both Claimant and Proactive Therapy. In *George v. Guillory*, 00-591, p. 9 (La.App. 3 Cir. 11/2/00), 776 So .2d 1200,1207, this court stated:

> The determination of whether an employer or insurer should be cast with penalties and attorneys fees is essentially a question of fact, and the workers' compensation judge's finding shall not be disturbed on appeal absent manifest error. *Wiltz v. Baudin's Sausage Kitchen*, 99-930 (La.App. 3 Cir. 6/19/00); 763 So.2d 111. Under La.R.S. 23:1201, sanctions, in the form of penalties and attorneys fees, are available when workers' compensation benefits are not provided as required by law. *See Clifton v. Rapides Reg'l Med. Ctr.*, 96-509 (La.App. 3 Cir. 10/9/96); 689 So.2d 471.

Appellants contend that since Claimant's primary reason for leaving her office was to engage in a personal mission, they were not arbitrary and capricious in denying benefits and should not be cast for penalties and attorneys' fees. However, this argument ignores the doctrine of re-entry which states that an employee who deviates from the course and scope of her employment is only outside the scope of her employment until such time as the employee returns to the route of the business trip. *See Belt*, 493 So.2d 278; *See also Timmons*, 761 So.2d 507 and *Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So.2d 1181. Accordingly, we find no clear error in the OWCJ's award of penalties and attorneys' fees.

As noted earlier, Claimant, Jo Lynn Duran, answered Appellants' appeal seeking additional attorney's fees for work necessitated by Appellants' appeal. An award for attorney fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. *Colonial Nursing Home v.*

6

*Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La.4/21/03), 841 So.2d 802. Considering Claimant's attorney had to do additional legal research, prepare a brief and orally argue the case before this court, we find an additional award of $2,500.00 is reasonable under these circumstances.

Accordingly, for the reasons stated, we amend the judgment of the OWCJ to increase the Claimant's attorney's fees by $2,500.00; in all other respects the judgment is affirmed. All costs of this appeal are taxed against Appellants.

**AFFIRMED AS AMENDED.**