# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1071


SANDRA WILLIAMS

VERSUS

ACE TRANSPORTATION, INC.


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 06-02374
HONORABLE SAM L. LOWERY
WORKERS' COMPENSATION JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy H. Ezell, Judges.


**AFFIRMED.**

**Randal L. Menard**
**Attorney at Law**
**Post Office Box 80795**
**2848 Verot School Road, Suite 101**
**Lafayette, LA  70598**
**(337) 232-8235**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Sandra Williams**

**Mark A. Watson**
**Stafford, Stewart & Potter**
**3112 Jackson Street**
**Post Office Box 1711**
**Alexandria, LA  71309**
**(318) 487-4910**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Ace Transportation, Inc. and**
    **Liberty Mutual Insurance Company**

PETERS, J.

Ace Transportation, Inc., and its workers' compensation insurer, Liberty Mutual Insurance Company, appeal the judgment of the workers' compensation judge (WCJ) awarding Sandra Williams workers' compensation benefits for damages she sustained in a February 16, 2005 Lafayette Parish automobile accident. For the following reasons, we affirm the WCJ's judgment in all respects.

## DISCUSSION OF THE RECORD

Ace Transportation, Inc. (Ace Transportation) and Liberty Mutual Insurance Company (Liberty Mutual) do not dispute the occurrence of the February 16, 2005 accident, the fact that Ms. Williams was employed by Ace Transportation on that day, or that she was driving an Ace Transportation leased truck at the time of her accident. The factual dispute which forms the basis of this appeal involves whether Ms. Williams was in the course and scope of her employment at the time of the accident.

Ace Transportation employed Ms. Williams as a hotshot driver, and she had provided escort service for an eighteen wheeler from the Port of Iberia to Raceland, Louisiana on the morning of February 16, 2005. After completing that run, she returned to Ace Transportation's terminal in Broussard, Lafayette Parish, Louisiana, dropped off the paperwork for the run, and informed the terminal dispatcher[1] that she had been contacted by the Halliburton Energy Services (Halliburton) office in Lafayette to make an afternoon run to Houma to pick up equipment and deliver it back to Halliburton's Lafayette facility; that she was going home to change clothes;[2] then she would stop at a fast-food restaurant for lunch; and she would the continue to Houma for the pick up and delivery. She testified that the dispatcher told her to telephone the terminal when she approached her home in case a delivery to Houma

_____

[1]The record identifies the terminal dispatcher only as "Lee."

[2]The change of clothes was made necessary by a personal problem suffered by Ms. Williams at the time.

materialized. In that event, she could make a delivery while on the way to Houma and, thereby, generate more income. According to Ms. Williams, the dispatcher told her he would keep her name on the terminal board which would indicate that she was still out on a run.

Almost immediately after Ms. Williams left the terminal, the dispatcher telephoned her with a question about the earlier run. While stopped at a red light and attempting to recover the paperwork from behind her seat so she could respond to the telephone inquiry, Ms. Williams' vehicle was struck from behind by another vehicle. The accident caused significant injuries to Ms. Williams' back and neck.

Ms. Williams' disputed claim for benefits resulted in a judgment against Ace Transportation and Liberty Mutual awarding her workers' compensation benefits. In rendering judgment, the WCJ factually found that Ms. Williams was within the course and scope of her employment at the time of her accident. Ace Transportation and Liberty Mutual perfected this appeal, asserting two assignments of error:

1.  The workers' compensation judge erred in finding that the employee, Sandra Williams was in the course and scope of her employment at the time that she was involved in a third party motor vehicle accident.

2.  The workers' compensation judge erred in finding that the employee, at the time of the third party motor vehicle accident, had not deviated from her employment.

**OPINION**

It is well settled that the standard of review applied in workers' compensation cases is the "manifest error—clearly wrong" standard. *Dean v. Southmark Constr.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117.

> Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander [v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94)], 630 So.2d [706,] 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable

2

inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*, 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

*Id.*

In *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992), the Louisiana Supreme Court stated that an employee's testimony, on its own, might be sufficient to satisfy the employee's burden of proof. That is, "provided two elements are satisfied: (1) no other evidence discredits or casts doubts upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* at 361 (*citing West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979), and WEX S. MALONE & H. ALSTON JOHNSON, III, 13 LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION, § 253 (2d ed. 1980)). Although the court in *Bruno* was specifically discussing an employee's burden of proof on the occurrence of an accident, the same holds true with regard to any burden of the employee.

An employee who suffers an injury, from an accident "arising out of" and "in the course of" his employment, is entitled to coverage under the employer's workers' compensation insurance. La.R.S. 23:1031(A). The "arising out of" and "in the course of" have been held to be "dual requirements" of proof, with the former requiring an "inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment." *Raybol v. La. State. Univ.*, 520 So.2d 724, 726 (La.1988). Thus, Ms. Williams' proof is two-

3

fold: (1) whether she was performing her duties as a hotshot driver and (2) whether the accident occurred while she was doing so.

In their first assignment of error, Ace Transportation and Liberty Mutual question whether Halliburton had contacted Ms. Williams to perform a run to Houma. That is to say, there was no evidence of a proposed run on behalf of Halliburton. Their entire argument rests on the testimony of Allen Landry, III, the Halliburton employee responsible for coordinating shipment of Halliburton equipment to oilfield companies through the use of "hotshot" companies for quick delivery.

Mr. Landry testified that the choice of hotshot company to be utilized was left to the purchasing oilfield company—in this case, Halliburton's customer—but that if the company had no preference, Halliburton would make the choice. If that became the case, then Halliburton would normally call on Ace Transportation to provide the service. While suggesting that retaining Ace Transportation normally meant lining up a truck and not a specific driver, Mr. Landry qualified that suggestion by acknowledging that the company would use a specific driver—one that had proved to be reliable—if that driver was available. In fact, he had access to hotshot driver business cards left with him and would call those individual drivers for availability before contacting the Ace Transportation dispatcher to line up a truck. He acknowledged that Ms. Williams was not only a dependable driver, but one of the favored drivers.

When questioned with regard to February 16, 2005, specifically, Mr. Landry had no independent recollection of asking Ms. Williams to perform services for Halliburton on that date. Additionally, he could produce no Halliburton documentation to establish that the run suggested by Ms. Williams was ever contemplated.

4

With regard to a paperwork requirement, Mr. Landry testified that Halliburton normally generated a written material transfer ticket every time it contacted a hotshot company for services. The ticket would contain the hotshot company name, the oilfield client's name, a description of the equipment being loaded, the signature of the person responsible for loading the equipment, and the signature of the hotshot driver. However, as explained by Mr. Landry, such a ticket would not be generated until the hotshot driver reached Halliburton's facility, and a call to a driver would not generate any paperwork.

Ace Transportation and Liberty Mutual introduced various invoices and handwritten waybills from runs performed for various customers including Devon Energy Production Company, Patterson Rental Tools, Halliburton, and BP America Production Company on February 16, 2005; February 25, 2005; and March 1, 2, 3, 6, and 8, 2005.[3] In their brief, they point to the March 6 invoice, wherein a driver's name was scratched out and replaced by another, to support their argument that had Halliburton scheduled a run on February 16, Ace Transportation would have generated a form with Ms. Williams' name and truck number, which then would have been scratched out and another drivers' name and vehicle number inserted after the accident.

In finding that Ms. Williams proved that she was in route to Houma on Halliburton's behalf at the time of the accident, the WCJ stated in his oral reasons:

> I find it somewhere between interesting and incredible that when Ace Transportation finally got around to responding to the plaintiff's request for documents for all runs on February 16th, the day of the accident, that that correspondence shows a virtual absence of activity in the oilfield on both that day and the days before and after. And we're talking here about Ace Transportation one of the largest and busiest operators in South Louisiana.

---

[3]Ms. Williams is listed as a driver on the February 16 and March 6 invoices.

5

But that aside, Mrs. Williams explained carefully and coherently why there might well be no ticket evidencing the second run. She said, and no one contradicted her, that it's common practice in the oil patch for companies such as Halliburton to call drivers they know and trust to see if they're available for a run and that the formal paperwork is cranked out later at the terminal. The employer's defense of "no ticket/no run," runs counter to both what the credible testimony was and what commonsense and basic knowledge confirms. There is no doubt in my mind that Mrs. Williams did not invent this story about driving to Houma.

After reviewing the record in its entirety, we find that it was reasonable for the WCJ to find that Halliburton had, in fact, contacted Ms. Williams about a run to Houma, despite the fact that no invoice/waybill existed to prove that fact. The WCJ obviously found Ms. Williams to be credible in light of his statements casting doubt on Ace Transportation's credibility. This was evidenced by the WCJ's questioning of the fact that Ace Transportation failed to introduce any invoices for the day before and after February 16, 2005. The WCJ found it incredible that one of the largest and busiest hotshot operators in Southwest Louisiana had made no deliveries on those dates. We find no error in these findings despite the fact that the WCJ accredited Ms. Williams with Mr. Landry's testimony that it was not uncommon for Halliburton to contact a dependable driver ahead of time, but that it would not generate the forms associated with the proposed run until the driver actually reached Halliburton's facility. Ms. Williams testified that she was on call twenty-four hours/seven days a week. Nothing in the record casts any doubt on her version of events. Even the existence of the March 6, 2005 invoice with the driver's name scratched out and another put in his/her place casts no doubt on Ms. Williams' version. If no paperwork is generated until the run actually occurs, then, in all actuality, Halliburton cancelled the February 16, 2005 run after Ms. Williams' accident.

Based on the foregoing, we find that it was reasonable for the WCJ to determine that Ms. Williams was on a run for Ace Transportation at the time of her

accident. This assignment of error is without merit.

In its second assignment of error, Ace Transportation and Liberty Mutual argue that Ms. Williams' accident was not work-related because she had deviated from her employment duties at the time of the accident. They base this argument on Ms. Williams' testimony that at the time of the accident, she was on her way home to change clothes and then pick up something to eat at Wendy's drive-thru before starting for Houma.

In *Proactive Therapy v. Yellow Book, USA*, 03-1705, pp. 4-5 (La.App. 3 Cir. 8/4/04), 880 So.2d 119, 122-23, this court discussed deviation from the workplace in the context of a workers' compensation case:

> Deviation occurs when an employee, after having entered the work place, leaves or turns aside to do something personal or not work related. An injury occurring during the time of this deviation is generally not considered work related and, therefore, is not compensable under the workers' compensation laws. In *Timmons v. Silman*, 99-3264 (La.5/16/00), 761 So.2d 507, the court ruled that an employee, Ms. Silman, who had gone to the post office to refill a postage meter for her employer was not within the course and scope of her employment when she was involved in an automobile accident. At the time of the accident, Ms. Silman was on her way to a bank, some 18 blocks in the opposite direction past her employers' business to cash her Christmas bonus check. *See also Hoy v. Gilbert*, 98-1565 (La.3/2/99), 754 So.2d 207.

> Our courts also recognize that once one has deviated from his or her employment, it is possible to re-enter the work place. If an employee is injured after returning to the work place or re-entering the work place, our courts will generally consider the injury to be work related and the employee is entitled to the benefits of the workers' compensation laws. For instance, in *Belt v. State Through Louisiana Board of Cosmetology*, 493 So.2d 278, 285 (La.App. 3rd Cir.), *writ denied*, 496 So.2d 1044 (La.1986)[,] this court stated:

>> It is well established in our law that where there is a temporary deviation from the course of employment to engage in purely personal business, such an employee re-enters his employment and the scope thereof when he has completed his private mission and turned toward the direction of the employment destination for the purpose of discharging his employment duties. *Simmons v. Liberty Mutual Insurance Company*, 185 So.2d 822 (La.App. 3rd

7

Cir.1966); *Campbell v. Baker, Culpepper & Brunson*, 382 So.2d 1046 (La.App. 2nd Cir.1980)[,] *writ refused*, 385 So.2d 793 (La.1980).

Ms. Williams testified that she had been employed off and on as a driver by Ace Transportation for six years and, as a hotshot driver, she transported oilfield equipment and personnel at all hours of the day and night. She was driving a vehicle leased to Ace Transportation at the time of her accident, was working no set schedule, and was on call twenty-four hours a day and seven days a week. In fact, at the time of her accident she was talking with the Ace Transportation dispatcher concerning the run she had made that morning. In his oral reasons, the WCJ held that Ms. Williams was within the course and scope of her employment at the time of her accident. He found factually that she was still logged out as being on a job by Ace Transportation and that she was headed to Houma to pickup oilfield equipment in furtherance of Ace Transportation's business.

Considering the foregoing, it was reasonable for the WCJ to find that Ms. Williams was in the course and scope of her employment when rear-ended. In *Proactive Therapy*, the court declared that the nature of the employee's work was a key element in determining whether she was within the course and scope of her employment. We, likewise, find that the nature of Ms. Williams' work is key in determining whether she was within the course and scope of her employment at the time she was injured. A hotshot driver operates a vehicle in order to make quick deliveries in the oilfield. Ms. Williams said she is constantly on call, and her office is basically her vehicle. In light of these facts, she had not deviated from her employment when she left the terminal. We find no error in the WCJ's determination that Ms. Williams had not deviated from her employment when the accident occurred.

8

**DISPOSITION**

For the foregoing reasons, we affirm the judgment of the workers' compensation judge in all respects and assess all costs of this appeal to Ace Transportation, Inc. and Liberty Mutual Insurance Company.

**AFFIRMED.**